HILL COUNTY, TEXAS, v. GEORGE H. SHEPPARD, COMPTROLLER.

No. 8206. Decided February 23, 1944.
Rehearing overruled March 22, 1944.
(178 S. W., 2d Series, 261.)

R. W. *Calvert*, of Hillsboro, and *C. C. Randle*, of Waxahachie, for petitioner.

*Grover Sellers*, Attorney General, and *Geo. W. Barcus*, Assustant Attorney General, for respondent.

*J. C. Roe*, of Corsicana, filed brief as amicus curiae.

MR. CHIEF JUSTICE ALEXANDER delivered the opinion of the Court.

This is an original proceeding brought in this Court by Hill County against Honorable George H. Sheppard, Comptroller of Public Accounts of the State of Texas, for a writ of mandamus to compel the Comptroller to pay into the Officer's Salary Fund of Hill County the statutory proportionate part of the salary of $5,500.00 fixed by the Commissioners' Court of Hill County for Honorable Robert W. Calvert as the Criminal District Attorney of said county, as provided for in Vernon's Annotated Revised Civil Statutes Article 3912e (Acts 1935, 44th Leg., 2nd

C. S., p. 1762, ch. 465). The Comptroller, upon the advice of the Attorney General, has refused to make the contribution in question on the ground that there is no legally constituted Criminal District Attorney of Hill County.

The Act purporting to create the office of Criminal District Attorney of Hill County is in part as follows:

"Art. 326q.

"Section 1. In those counties in this State having a population of not less than Thirty Three Thousand Five Hundred (33,500) and not more than Seventy Five Thousand (75,000) inhabitants and not containing a city of more than Fifty Thousand (50,000) inhabitants as determined by the last preceding Federal Census, and each succeeding Federal Census thereafter, and in which counties there are one or more Judicial Districts, and in which the County Attorney performs the duties of County Attorney and District Attorney and in which there is not now a District Attorney, the office of Criminal District Attorney is hereby created, and shall exist from and after the passage of this Act. Such officer shall be known as Criminal District Attorney of such county. A criminal District Attorney shall be elected in each such county at the next general election, and at each succeeding general election after the passage of this Act. He shall hold his office for the period of two years and until his successor is elected and qualified. He shall possess all the qualifications and take the oath and give the bond required by the Constitution and laws of this State for other District Attorneys. And it is further provided and directed that the person who is the present County Attorney of any such county shall continue in office and take the oath and give the bond required by the Constitution and laws for other District Attorneys and assume the duties and be known as the Criminal District Attorney of the county, and proceed to organize and arrange the affairs of the office of Criminal District Attorney of such county and appoint assistants as provided in this Act, and receive the fees provided for in this Act for such office until the next general election and until his successor shall be elected and qualified.

"Sec. 2. The Criminal District Attorney of any such county shall have and exercise, all such powers, duties and privileges within such county as are by Law now conferred or which may hereafter be conferred upon District and County Attorneys.

"Sec. 3. * * * The Criminal District Attorney shall be allowed to retain out of the fees earned and collected by him the

sum of Five Thousand Five Hundred ($5,500.00) Dollars per annum, as his compensation. * * *

*    *    *    *    *    *    *

"Sec. 5-A. It is not the intention of this Act to create any office of District Attorney nor any other Constitutional office and office of Criminal District Attorney is hereby declared to be a separate and distinct office from the Constitutional office of District Attorney and no Criminal District Attorney shall draw or be entitled to any salary whatsoever from the State of Texas." (Acts 1931, 42nd Leg., p. 844, ch. 354.)

It is the contention of the Attorney General, in effect, that the Act in question does not validly create the constitutional office of . District Attorney or Criminal District Attorney, and that the Legislature could not create a statutory office with power to take over the duties of County Attorney under the facts of this case.

Our Constitution, Article V, Section 21, reads as follows:

"A county attorney, for counties in which there is not a resident criminal district attorney, shall be elected by the qualified voters of each colunty, who shall be commissioned by the Governor, and hold his office for the term of two years. In case of vacancy the Commissioners' Court of the county shall have power to appoint a county attorney until the next general election. The county attorneys shall represent the State in all cases in the District and inferior courts in their respective counties; but if any county shall be included in a district in which there shall be a district attorney, the respective duties of district attorneys and county attorneys shall in such counties be regulated by the Legislature. The Legislature may provide for the election of district attorneys in such districts, as may be deemed necessary, and make provision for the compensation of district attorneys, and county attorneys: provided, district attorneys shall receive an annual salary of five hundred dollars, to be paid by the State, and such fees, commissions and perquisites as may be provided by law. County attorneys shall receive as compensation only such fees, commissions and perquisites as may be prescribed by law."

It will be noted that the Constitution refers to a county attorney, a district attorney, and a criminal district attorney. What is meant by a "criminal district attorney" as used in the Constitution, and what is the difference, if any, between that office and the office of district attorney, and is the office of criminal district attorney a constitutional office?

The Constitution does not define the office of "criminal district attorney." Article V, Section 21, quoted above, in which the term was used, was first adopted in 1876. The Constitution of 1876 as well as the Constitutions of 1866 and 1869 contain provisions authorizing the creation of *criminal district courts* under certain conditions. In 1883 the Legislature adopted an Act which contained a definition of criminal district attorney. That Act provided as follows:

"When a resident criminal district Attorney is elected and has qualified, and there is in the county of his residence, a county attorney, such county attorney shall cease to perform the functions of such office, and there shall be no county attorney in such county during the time there may be a resident criminal district attorney therein. *By the term, criminal district attorney, is meant an attorney for a criminal district court.*" (Italics ours.) (See Acts 1883, p. 2; Rev. Stats. 1895, Art. 283; Rev. Stats. 1911, Art. 349).

■ While this definition by the Legislature does not necessarily control this Court in construing the Constitution, yet since this statute was enacted by the Legislature near the time when the Constitution containing the same term was adopted by the people, the Act of the Legislature carries great weight in determining what was meant by the use of the same term in the Constitution. It is unnecessary for us to here determine whether the Legislature could create the office of criminal district attorney for a court other than a criminal district court. That question is not before us. It is sufficient to say that when the Constitution is construed in the light of the statute above quoted, it is our opinion that the term criminal district attorney refers to a class or kind of district attorneys, and that criminal district attorney is a district attorney within the meaning of the Constitution.

■ The office of District Attorney, including that of criminal district attorney, is a constitutional office, the duties and compensation of which are provided for in Article V, Section 21, of the Constitution above quoted. Under that section of the Constitution the district attorney is entitled to "receive an annual salary of five hundred dollars to be paid by the State and such fees, commissions, and perquisites as may be provided by law."

■ When we come to consider the statute under which it is claimed that the office of criminal district attorney for Hill County was created, we find that although Section 1 thereof may

possibly be broad enough in its terms to evidence an intention to create the constitutional office of criminal district attorney, who under the Constitution would be entitled to receive an annual salary of five hundred dollars from the State, Section 5-A of the same Act in language that cannot be misunderstood positively refutes any such intention. That section of the Act provides in no uncertain terms that *it was not the intention of the Legislature to create the office of district attorney or any other constitutional office*, and that the criminal district attorney provided for therein *should not be entitled to any salary whatsoever from the state.*

Counsel for petitioner calls attention to the well-established rule that it is our duty to construe the Act as a whole; that if the Act admits of two constructions, one of which will render it valid and the other invalid, all reasonable doubt should be resolved in favor of the validity of the Act; and that where the different parts of the Act appear to be in conflict, the apparent conflict should be harmonized if possible, and to this end the court would be authorized to disregard that part of the Act which brings about the conflict. He therefore suggests that we should, in effect, disregard the provisions of Section 5-A, and hold that the Act created the constitutional office of criminal district attorney. We recognize the general application of the above rules, but we do not think they would justify this Court in overriding and ignoring the plain and unambiguous provisions of Section 5-A. Apparently the Legislature was willing to create an office to take over the duties of county attorney in certain counties and to increase the compensation to be allowed therefor over and above that allowed for county attorneys, provided the counties would bear all of the expense thereof; but the Legislature was unwilling to so increase the compensation if the State was to be required to bear any part thereof. The Legislature apparently recognized that if it created the constitutional office of district attorney or criminal district attorney the State would be required to pay at least five hundred dollars per year on the salary of such officer as provided in Article V, Section 21, of the Constitutional. In order to avoid this responsibility the Legislature, by the addition of Section 5-A of the Act, provided that it was not thereby the intention to create the office of district attorney or any other constitutional office, and that the State should not be liable for any part of the salary to be paid to such officers. The Legislature hardly could have used stronger or plainer language to indicate its positive intention not to create a constitutional office of any kind, and particularly one that would subject the State to liability for a

part of the compensation therefor. For this Court to disregard or ignore the plain provisions of Section 5-A would be, in effect, to write a new bill for the Legislature radically different from the one that was adopted, and one which probably would not have been adopted. To ignore the legislative intent so clearly expressed in the bill would be "an inexcusable breach of judicial duty" and "an unwarranted interference with the exercise of lawful legislative authority." Love v. Wilcox, 119 Texas 256, 28 S. W. (2d) 515, 70 A. L. R. 1484; 39 Tex. Jur. 172. If it be conceded that Section 1 of the Act evidences an intention to create the constitutional office of criminal district attorney, as contended for by petitioner, then Section 5-A of the same Act, which irrefutably evidences an intention not to create a constitutional office of any kind, is in irreconcilable conflict therewith, and the whole Act must fall. Walsh v. McConnell (Com. of App.), 273 S. W. 833; Hamrick v. Simpler, 127 Texas 428, 95 S. W. (2d) 357. We therefore hold that the Act in question did not create the constitutional office of district attorney, including that of criminal district attorney.

■ Now we come to consider what was the effect of the statute if it undertook to create a statutory office to take over the duties of the county attorney. Article V, Section 21, of the Constitution above quoted carefully apportions the duties of representing the State in district and inferior courts (other than those conferred upon the Attorney General by Article IV, Section 22) among the constitutional officers of district attorney, including criminal district attorney, and county attorney. Certain designated duties therein are assigned to the county attorney where there does not exist the constitutional office of district attorney. We think that it is well settled that since the Constituion imposed certain duties upon the county attorney, the Legislature, in the absence of other constitutional authority therefor, could not create a statutory office with power to take over and exercise such functions. The rule is thus stated in Texas Jurisprudence:

"Where certain duties are imposed or specific powers are conferred upon a designated officer, the Legislature cannot withdraw them nor confer them upon others nor abridge them or interfere with the officer's right to exercise them unless the Constitution expressly so provides. 30 Tex. Jur. 445.

The above rule is abundantly supported by the following authorities: Moore v. State, 57 Texas 307, Maud, Tax Collector, v. Terrell, 109 Texas 97, 200 S. W. 375; Harris County v. Stewart, 91 Texas 133, 135, 41 S. W. 650; Staples v. State, 112 Texas 61,

245 S. W. 639; Allen v. Fisher, 118 Texas 38, 9 S. W. (2d) 731; State ex rel. Downs v. Harney (Tex. Civ. App.), 164 S. W. (2d) 55 (writ refused).

We hold that the Legislature could not create a statutory office with authority to take over the duties of county attorney. The Act is therefore invalid.

Our holding on the above question makes it unnecessary for us to pass on the State's contention that the Act in question violates Article III, Section 56, of the Constitution which forbids the creation of an office by a local law.

The application for the writ of mandamus is denied.

Opinion delivered February 23, 1944.

Rehearing overruled March 22, 1944.