

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

GROVER SELLERS
XXXXXXXXXXXXXXXX
ATTORNEY GENERAL

Honorable C. H. Cavness
State Auditor
Austin, Texas

Dear Sir:

Opinion No. O-6676

Re: State Apportionments to counties
operating under Officers' Salary
Fund and where there is a Criminal
District Attorney or County Attor-
ney performing the duties of Dis-
trict Attorney.

We are in receipt of your request for an opinion on the above mat-
ter, said request being as follows:

"In connection with an audit we are now making of the Ju-
diciary Section of the State Comptroller's Department for the
three years ended August 31, 1944, we find it necessary to re-
quest an opinion from your Department as to the following appor-
tionment appropriations:

"Apportionments to counties where county officers are paid
salaries and where there is a Criminal District Attorney or
County Attorney performing the duties of District Attorney (for
33 counties in 1940, per Sub-section B, Section 13, Chapter 465,
Acts Forty-fourth Legislature).

"Year Ended August 31st:

| | |
|---|---|
| "1942 | $146,429.00 |
| 1943 | 146,429.00 |
| 1944 | 146,429.00 |

"Article 3912e, Section 13B, reads as follows:

"The compensation of a criminal district attorney or county
attorney performing the duties of district attorney, together
with the compensation of his assistants, shall be paid out of
the County Officers' Salary Fund, but the State shall pay into
such fund each year an amount equal to a sum which bears the
same proportion to the total salary of such criminal district
attorney or county attorney performing the duties of a district
attorney, together with the salary of his assistants, as all

felony fees collected by such official during the year 1935 bear
to the total fees collected by such official during such year.'

"We quote, in part, from Attorney General's Opinion addressed
to the Comptroller of Public Accounts under date of September 15,
1936, relative to the inclusion of stenographers, bookkeepers and
investigators as 'assistants':

" 'Receipt is hereby acknowledged of your letter of September
15, 1936 wherein you refer to subsection (b) of Section 13 of
Senate Bill No. 5, Acts of the Second Called Session of the Forty-
fourth Legislature and wish to be advised as to whether or not
stenographers, bookkeepers, and investigators should be consid-
ered as assistants under the terms of this Section. . . . . . .
While stenographers, bookkeepers, and investigators are assistants
in a limited sense of the word in that they assist in the conduct
of the duties of the office, we are of the opinion that the Leg-
islature did not intend to include such employees in the terms of
Section 13 (b), supra.  It is the opinion of the writer that the
Legislature intended to include only assistant district or county
attorneys as that word is commonly accepted, that is, practicing
attorneys who in some way assist in the prosecution of cases in
the respective counties.'

"We quote in part, from your opinion addressed to the Comp-
troller under date of March 9, 1936:

" 'When will the Comptroller be required to pay into the
County Officers' Salary Fund the moneys provided for under Sub-
section B of Section 13?

" 'We are of the opinion that the Comptroller's Department
should pay into the Officers' Salary Fund of the respective
counties the amount provided for in Section 13 (b) at the first
of each year, that is, on January First.' 。

"We quote, in part, from your opinion No. 0-6226, addressed
to the Comptroller:

" 'You state that the maximum amount that could be paid the
Criminal District Attorney and his assistants by statute is
$52,150.00 per annum, but the actual expenditures by Bexar County
to the Criminal District Attorney and his assistants is $45,500.00
for this year. . . . . . . . . . . . . . . . . . . . . . . . . .

" '. . . . . . it is our opinion that in making your alloca-
tion of the appropriation as provided by said statute, you should
make your calculations of the distributions on the amount actually
paid by the county to the Criminal District Attorney and his as-
sistants and not on the maximum amount that the law authorizes.'

"In auditing the records of the Comptroller's Department pertaining to this salary apportionment for the three-year period ended August 31st, 1944, we find the following situation:

"1. At the beginning of each calendar year the Comptroller prepares a schedule of salary apportionment for each and all participating counties. The salaries used by the Comptroller in this schedule are those furnished by each county by letter from such county purporting to be the salaries which will be paid for the ensuing calendar year to Criminal District Attorneys and their assistants.

"This, of course, means that the Comptroller is using what might be considered estimated salaries and which in most cases represent maximum salaries rather than the actual salaries paid as outlined in Attorney General's Opinion No. O-6226. Obviously, the Comptroller could not know what salaries had been paid until the end of the calendar year based upon each county's payroll.

"2. During this three-year period some counties reported in their letters to the Comptroller for inclusion of salary apportionment calculations, salaries for abstractors, investigators, clerks and stenographers, all of which salaries were used by the Comptroller in computing salary apportionment to the respective counties.

"3. Some counties included the names of 'Assistants' who were not shown in the Texas Legal Directory and/or the records of the Supreme Court of Texas as being licensed and practicing attorneys, which fact was discovered by us in checking the names submitted to the Comptroller back to the Legal Directories, etc. In one instance we found that a county included the name of an attorney who had not paid his Bar Association dues since 1939.

"4. In checking the names and salaries shown each year as reported by the respective counties to the Comptroller for inclusion in salaries apportionment to the State Auditor's Forms No. 383 and 383a, which forms report the fees received and the annual salary paid the County Officers and employees, we found that in many instances the salary listed in such letters to the Comptroller by the respective counties exceeded the actual salaries paid such County's officers and employees as reflected in Forms No. 383 and 383a.

"We also found that numerous counties had not furnished Forms No. 383 and 383a to the State Auditor each year as required by Statute, so in order to obtain the necessary data for audit purposes, we wrote each county which has participated in State Salary Apportionment requesting that they furnish us with a list of all salaries paid attorneys eligible

for participation in this apportionment for the calendar years ended December 1st, 1941, 1942, 1943 and 1944.

"In checking the replies to these confirmation letters to those submitted by the counties to the Comptroller, we found the same situation to exist - the letters used by the Comptroller reflected salaries which were in excess of the amounts actually paid.

"5. In checking the salaries submitted by the respective counties to the governing Statutes, it appears to us that some counties have included salaries for positions which are not eligible for participation in the apportionment and in some instances the salaries submitted were in excess of the amounts set forth in the Statutes.

"In order to arrive at a definite procedure to be followed by the Comptroller in computing State Salary Apportionment in the future and also to enable us to complete our audit for the three-year period ended August 31st, 1944, we are attaching herewith a schedule prepared by us from the letters received from the respective counties which was the basis for salary apportionment as used by the Comptroller for the three-year period under audit. This schedule shows the names, positions and salaries, by counties, by years for the three years ended August 31st, 1942, 1943 and 1944.

"It will be seen that in this schedule we have footnoted (by letter references) covering certain counties which have included salaries which we do not believe are eligible under the existing Statutes.

"This schedule provides additional columns to be filled in by you as follows:

"1. On this schedule please insert the law references for each position in each county and advise whether any of such laws are unconstitutional as to participation in State Salary Apportionment.

"2. We also ask that you please fill in the remaining three columns in this schedule to show the maximum salary allowed by law for each of the positions for each county eligible for participation in this salary apportionment.

"3. The salary apportionment appropriations for the three years under review refer to thirty-three (33) counties, whereas the attached schedule covers only thirty-one (31) counties receiving such apportionment as computed by the Comptroller. Should two more counties participate in

this apportionment? If so, please furnish the names of the counties, the applicable laws and the respective salaries to be included for such counties.

"4. What is the effect of the Special Federal Census in Jefferson County on that county's apportionment - that Special Census increased the population from 145,329 in 1940 to 191,942 as of June 15th, 1943, the date of said Special Federal Census.

"5. Based upon your Opinion No. 0-6226 which is to the effect that calculations of the distributions should be computed on the amount actually paid by the county to the Criminal District Attorney and his Assistants rather than on the maximum amount the law authorizes, it appears to us that the Comptroller would have to wait until the end of each calendar year before he could calculate salary apportionment due the respective counties. Are we correct in assuming that this is the method which should be used, the salary data perhaps furnished the Comptroller at the end of each year through certified reports furnished by the County Auditors of the respective counties?

"6. Since we found that some counties have been over-paid salary apportionment (which of course means that other counties have been under-paid) over the period of the three years under audit, can such errors be adjusted from any salary apportionment appropriation balance and/or from future salary apportionment appropriations, and for what period of time? Would such adjustments be retroactive to January 1st, 1936, the effective date of the State Salary Apportionment laws?"

We will consider the apportionments to the named officials of the various counties in the order submitted by you and cite the statutes that authorized same, as well as to call attention to any errors that may have been made in making said apportionments. If desired, you can then place such matters into the schedule submitted with your request, which is returned herewith.

It will be necessary for us to refer to the various subdivisions of the statutes governing these matters but, instead of referring to each of the subdivisions, we will give the article and number thereof followed by a period and the number of the subdivision. All salaries will be considered on an annual basis without being so specified.

It may also be necessary for us to refer to and attach copies of other opinions of this department, and when that is done said opinions, and each of them, will be adopted as a part of this opinion insofar as they pass upon questions here discussed.

Bexar County. The Bexar County Criminal District Court was created and established by Article 52-161 of the Code of Criminal Procedure of the State of Texas, and Section 12 of said article provides for the election of

a criminal district attorney of said county. Article 3912e-1 of Vernon's Annotated Civil Statutes fixes the salary of said criminal district attorney at the sum of $7,400.00.

We are unable to state just what positions in the office of Criminal District Attorney of Bexar County were filled by any particular persons, as set forth on the schedule submitted, as some of the salaries paid such persons are less than those authorized by law. In our opinion, Article 3912e, Section 19(f-1), fully authorized all of the salaries shown in the schedule, since Bexar County had a population of 338,776 under the Federal Census of 1940 and such statute applied to the district attorney or the criminal district attorney, in any county having a population of not less than 325,000 nor more than 500,000 according to the last preceding Federal Census.

Your schedule shows twelve assistant criminal district attorneys for each of the three years. In 1942 the following salaries were paid: one assistant at $4,500.00, three at $4,200.00, two at $3,600.00, two at $3,000.00, and four at $2,700.00. In 1943 the following salaries were paid said assistants: two at $4,500.00, one at $4,200.00, three at $3,600.00, three at $3,000.00, and three at $2,700.00. And, in 1944 the following salaries were paid said assistants: two at $4,500.00, one at $4,200.00, three at $3,600.00, three at $3,000.00, and three at $2,700.00. The statute above referred to authorizes the criminal district attorney to appoint nine assistants and to fix their salaries at a rate not to exceed the following amounts: two at $4,500.00 per annum each, two at $4,200.00 per annum each, one at $3,600.00 per annum, one at $3,000.00 per annum, and three at $2,700.00 per annum each. In addition. to those, the criminal district attorney was authorized to appoint, with the advice and consent of the Commissioners' Court, the following additional assistants and pay them the salaries stated, to-wit, one at a salary not to exceed $4,250.00 per annum; one not to exceed $3,600.00 per annum; one not to exceed $3,000.00 per annum; and two not to exceed $2,700.00 per annum; and one not to exceed $2,400.00 per annum.

House Bill No. 849, Ch. 271, p. 428, Vernon's Texas Session Law Service, passed by the last Legislature and which became effective ninety (90) days after June 5, 1945, date of adjournment, applies to counties having a population of 225,000 or more and less than 500,000 according to the last preceding Federal Census, and fixes the salaries of criminal district attorneys in such counties at $6,500.00 up to January 1, 1946, and at $7,400.00 after that date. Our Opinion No. O-6728, a copy of which we hand you herewith, holds House Bill No. 849 to be in irreconcilable conflict with Senate Bill No. 246 insofar as said bills apply to Bexar County. Therefore, Senate Bill No. 246 will control the salary of the criminal district attorney in Bexar County.

Senate Bill No. 246, Ch. 312, p. 510, of said Law Service, applies to counties in this State having a population of not less than 300,000 nor more than 500,000 according to the last preceding Federal Census. This law became effective on June 2, 1945, and governs the salary of the criminal district attorney in Bexar County after that date. This law authorizes his salary to be $7,700.00 per annum, and it also authorizes an increase of 15% on the

salaries of the assistants, such increase to be based on the salaries of March 15, 1945. Said law also repeals Article 3912e-1, Vernon's Annotated Civil Statutes, which is the law hereinbefore set out as fixing the salary of the criminal district attorney for the years referred to by you.

As to those two referred to on your schedule for 1944, one at a salary of $3,000.00, the other at $2,700.00, whether or not the apportionment made on their salaries was legal, would depend entirely upon whether or not they actually served as such assistants. If they did not serve, then they should not have been included in the apportionment, as the holding made in our Opinion No. O-6226 that the calculation should be based on the amount actually paid is evidently correct.

Article 3912e, Section 13, of said statutes provides that in counties having a population of 20,000 or more and less than 190,000, the Commissioners' Court is authorized to fix the salaries of the county officials therein named, including the county attorney, criminal district attorney and county attorney who performs duties as district attorney, which should be not less than the total sum earned as compensation by them in their official capacity for the year 1935 and not more than the maximum amount allowed to such officials under laws existing on August 24, 1935. It was provided further that in counties falling within a certain limit as to population according to the last preceding Federal Census such counties could have such amounts increased in the event the assessed valuations were in excess of the amounts therein set forth according to the last approved preceding tax roll. Article 3912e, Section 15, of said statutes, contains provisions relative to the salaries that such officials in counties having a population of less than 20,000 according to the last preceding Federal Census could be paid, but none of the counties herein referred to come within said article and section. Therefore, it will not be further referred to. Our Opinions Nos. O-2748 and O-2546-A contain a full discussion of the rules and methods governing the fixing of such salaries under the above referred to provisions, and copies of same are enclosed herewith for your information.

An exception to the rule set out in Article 3912e, Section 13, that salaries shall not be less than the total sum earned for the year 1935 and not more than the maximum allowed under laws existing on August 24, 1935, is contained in Article 3912e-7, which became effective July 5, 1941. This law applied, however, only to Hidalgo and McLennan Counties during all of 1942, 1943 and 1944 and to Jefferson County up to June 15, 1943, and same will be further considered in connection with each of said counties.

These rules do not apply, however, to counties whose population is in excess of 190,000 as such counties come within the provisions of Article 3912e, Section 19.

Brazos County. This county had a population of 21,835 in 1930. Under Articles 3883.1 and 3891, the county attorney of this county could have been paid a salary of $3,000.00. Under Article 3902.1, the first assistant county attorney could have been paid not to exceed $1,800.00 and other assistants not to exceed $1,500.00.

Collin County. This county had a population of 46,180 in 1930. Under Articles 3883.3 and 3891, the county attorney could have been paid a salary of $4,250.00. The population of this county for 1940 was 47,190 and the assessed valuations for 1941, 1942, and 1943 were $21,730,930.00, $22,350,260.00, and $22,352,325.00, respectively, therefore, under Article 3912e, Section 13, the county attorney could have been paid an additional 2% for 1942, an additional 3% for 1943 and an additional 3% for 1944, such percentages based upon the salary of $4,250.00. Under Article 3902.3, the first assistant county attorney could have been paid a salary of $2,100.00, and other assistants not to exceed $1,800.00.

Cooke County. The population of this county was 24,136 in 1930. Under Articles 3883.1 and 3891, the county attorney could have been paid a salary of $3,000.00. The population in 1940 was 24,909. The assessed valuations for 1941, 1942, and 1943 were $18,896,250.00, $20,089,410.00, and $19,487,800.00. Therefore, under Article 3912e, Section 13, the county attorney could have been paid an additional 4%, 6% and 5% of said salary for the years 1942, 1943, and 1944, respectively.

Dallas County. The Dallas County Criminal District Court was created and established by Article 52-1 -- 52-24 of the Code of Criminal Procedure of the State of Texas, and Section 52-24 thereof provides for a criminal district attorney. The 1940 population of Dallas County was 398,564, therefore, the salary of the criminal district attorney of Dallas County is governed by Article 3912e-2(b), which authorizes the sum of $7,400.00 in all counties in the State having a population in excess of 355,000 according to the last preceding Federal Census.

The salaries paid to the various assistant criminal district attorneys for the years named vary in amount, and we are unable to charge any of said salaries against any particular person, but Article 3912e, Section 19(f-1), which applies to counties having a population of not less than 325,000 and not more than 500,000, authorizes all of the salaries set forth in the schedule submitted.

You show in your schedule fifteen assistant criminal district attorneys in 1942 who were paid the following salaries: one at $4,500.00; one at $4,200.00; two at $3,600.00; two at $3,399.00 each; one at $3,708.00; two at $2,700.00 each; three at $2,472.00 each; one at $2,008.50; one at $2,162.50; and one at $1,854.00. You show thirteen for 1943 who were paid the following salaries: two at $4,500.00 each; three at $3,600.00 each; one at $3,900.00; one at $3,000.00; one at $2,700.00; and three at $2,400.00. You show twelve for 1944 who were paid the following salaries: two for $4,500.00 each; one for $3,900.00; three for $3,600.00 each; one for $3,000.00; three for $2,700.00 each; and two for $2,400.00 each. The above article authorizes the criminal district attorney to appoint nine assistants and pay them the following salaries: two at $4,500.00 per annum each; two at $4,200.00 per annum each; one at $3,600.00 per annum; one at $3,000.00 per annum; and three at $2,700.00 per annum each. With the advice and consent of the Commissioners' Court, the same article authorized him to appoint as many as six more assistants and pay

them the following salaries; one at $4,250.00 per annum; one at $3,600.00 per annum; one at $3,000.00 per annum; two at $2,700.00 per ahnum; and one at $2,400.00 per annum. In our opinion, the salaries paid said assistants during the years mentioned were authorized under the law, even though the amounts paid were in some cases less than the amount authorized.

We note you refer to some abstracters and clerks having been paid salaries when they were not licensed as practicing attorneys. Unless said abstracters and clerks were practicing law, they would not be required to be practicing attorneys. Since there is nothing to show that they were practicing law, that is, trying cases, or doing other things requiring a law license, we presume they were just what their positions imply, namely: abstracters and clerks. Under the opinion of this department referred to by you, dated September 15, 1936, and in which it was held that only assistant criminal district attorneys should be included in making up the apportionment, abstracters and clerks should not have been included therein.

What has been hereinabove said as to House Bill No. 849 and Senate Bill No. 246, passed by the last Legislature, is also applicable to Dallas County, and the salary of the criminal district attorney of Dallas County should be considered on the basis of $7,700.00 per annum from and after June 2, 1945, and the assistants on an increase of 15% on the salaries authorized to be paid on March 15, 1945, which would be those hereinabove set out.

Denton County. The population of this county was 32,322 in 1930. Under Articles 3883.2 and 3891, the county attorney could have been paid a salary of $3,500.00 per annum. The 1940 population was 33,658, and he could have been paid a compensation of 5%, 6% and 6% of said amount for each of the years 1942, 1943, and 1944, respectively, under Article 3912e, Section 13, since the assessed valuations for the preceding years of 1941, 1942, and 1943 were $19,240,755.00, $20,041,050.00, and $20,170,615.00, respectively. Under Article 3902.2 the first assistant county attorney could have been paid not to exceed $2,000.00, and other assistants not to exceed $1,700.00 each.

Eastland County. You refer to this county as having had a criminal district attorney for the years in question, but said county at no time was authorized to have other than a county attorney. Our Opinion No. 0-6374, a copy of which is enclosed herewith, holds that a county attorney was authorized for Eastland County, and our Opinion No. 0-5024, a copy of which is also enclosed, and which is referred to in Opinion No. 0-6374, holds that Article 326k-7, V. A. C. S., the only statute that would have authorized a criminal district attorney for Eastland County, was invalid. However, the person serving as county attorney or criminal district attorney of Eastland County, even if under the impression that he was legally criminal district attorney of such county was entitled to compensation, as held in our Opinion No. 0-3158, which deals with a similar situation in Grayson County, and a copy of which is herewith enclosed. Therefore, we will consider this county as having had at least a de facto county attorney and entitled to the regularly authorized apportionment.

The population of this county was 34,156 in 1930. Under Articles 3883.2 and 3891, the county attorney was entitled to a salary of $3,500.00. The 1940 population was 30,345, therefore, under Article 3912e, Section 13, he could have been paid an additional sum of 6% of 1942, 6% of 1943, and 5% in 1944, since the assessed valuations for the years preceding each of those years were $20,360,000.60, $20,372,340.00, and $19,575,780.00, respectively.

Ellis County. Ellis County is also referred to as having had a criminal district attorney. The only statute authorizing a criminal district attorney for such county is Article 326k-11, which, as held by our Opinion No. O-5024, hereinabove referred to, is unconstitutional, or Article 326q, which is also unconstitutional, as held by our Opinion No. O-5001, a copy of which is herewith enclosed. Your attention is also directed to the case of Hill County v. Sheppard, 178 S. W. (2d) 261, wherein the Supreme Court held Article 326q invalid. Therefore, we will only consider said county as having been authorized to have a county attorney during the time involved.

The population of this county in 1930 was 53,936. Under Articles 3883.3 and 3891, the county attorney could have been paid $4,250.00 per annum. The 1940 population was 47,733, therefore, under Article 3912e, Section 13, he could have been paid an additional sum of 8% for each of said years, since the assessed valuations for the preceding years were $27,709,750.00, $27,969,257.00, and $27,918,705.00, respectively. Under Article 3902.3, the first assistant county attorney could have been paid not to exceed $2,100.00. We are unable, however, to find any authority for a tax deputy in a county of this size. Said Article 3902.3 authorizes the appointment of other assistants, deputies or clerks, who can be paid not to exceed $1,800.00 each. One of these could be called a tax deputy and he would not need to be a licensed attorney, unless he should be practicing law.

Falls County. We know of no statute authorizing a criminal district attorney in this county other than those hereinabove referred to which have been held invalid. Therefore, this county will be considered as having had a county attorney only. The population of this county in 1930 was 38,771. Under Articles 3883.3 and 3891, the county attorney could have been paid $4,250.00 per annum. The 1940 population was 35,984 and under Article 3912e, Section 13, he could have been paid an additional 1% of said amount for the year 1944, since the assessed valuation for the year 1943 was $15,150,666.00. Under Article 3902.3, the first assistant county attorney could have been paid not to exceed $2,100.00.

Fannin County. The population of this county in 1930 was 41,163. Under Articles 3883.3 and 3891, the county attorney could have been paid $4,250.00 per annum. Under Article 3902.3, the first assistant county attorney could have been paid not to exceed $2,100.00.

Freestone County. The population of this county for 1930 was 22,589, and the same statement above made as to there being no authority for a criminal district attorney in this county applies here. Under Articles 3883.1 and 3891, the county attorney could have been paid a salary of $3,000.00 per annum.

Galveston County. The population of this county in 1930 was 64,401. Under Articles 3883.4 and 3891, the county attorney could have been paid $4,750.00. The population of the city of Galveston in 1940 was 60,862. Under Article 3887, which applies to counties having a population of 100,000 or less, and containing a city having a population in excess of 50,000 in which county there is no district attorney, there could have been not to exceed three assistant county attorneys in Galveston County, two of whom could have been paid not to exceed $2,700.00 per annum each and the other not to exceed $2,100.00 per annum.

House Bill No. 798, Ch. 187, p. 253, Vernon's Texas Session Law Service, passed by the last Legislature and which became effective May 9, 1945, provides that in all counties having a population of 60,001 and not more than 100,000 according to the last preceding Federal Census the county attorneys in such counties which do not have a district attorney, and where the county attorney performs the duties of county attorney and district attorney, the county attorney shall apply to the Commissioners' Court of his county for authority to appoint such assistant county attorneys as he may require in the performance of his duties, and the Commissioners' Court is authorized to determine the number to be appointed and fix the compensation to be paid within the limitations named therein, which shall be a reasonable one, not to exceed $3,600.00 per annum. This law applies to Galveston County from and after its effective date.

Grayson County. This county was at no time entitled to have a criminal district attorney, and we direct your attention to what has hereinabove been said as to the validity of the laws which undertook to create such an office. In 1930 the population of this county was 65,843. Under Articles 3883.4 and 3891, the county attorney could have been paid $4,750.00 per annum. Under Article 3902.4, the first assistant could have been paid $2,400.00 and other assistants $2,100.00 per annum each. What has been above said as to House Bill No. 798 also applies to Grayson County.

Gregg County. The criminal district court of this county was created by Article 199, Subdivision 124, V. A. C. S. Section 21 thereof authorized the criminal district attorney of said criminal district court to be paid a salary of $4,250.00, and Section 22(a) thereof authorized a first assistant criminal district attorney at $3,600.00 per annum and a second assistant criminal district attorney at $3,000.00 per annum.

Harris County. The criminal district court of Harris County was created by Article 52-25 -- 52-88 of the Code of Criminal Procedure of Texas, and Subdivision 52-43 thereof provides for the election of a criminal district attorney. The 1940 population of this county was 528,961, therefore, the salary of the criminal district attorney is governed by Article 3912e-2(b) which authorized same to be $7,400.00 in counties having a population in excess of 355,000.

The number and salaries of assistant criminal district attorneys in this county are governed by Article 3912e-2(f). Under this provision nine

assistants could be appointed and paid the following compensation: two at $4,500.00 per annum each; two at $4,200.00 per annum each; one at $3,600.00; one at $3,000.00 per annum; and three at $2,700.00 per annum each. In addition, should the district attorney be of the opinion that the number of such assistants is not adequate, he could, with the advice and consent of the Commissioners' Court, appoint the following additional assistants and pay them not to exceed the salaries mentioned: one at $4,250.00 per annum; one at $3,600.00 per annum; one at $3,000.00 per annum; and two additional assistants at $2,700.00 per annum each.

Under the schedule submitted by you, the following assistants were appointed and paid the stated salaries for each of said years: for 1942, two assistants at $4,500.00 each; three at $4,200.00 each; two at $3,600.00 each; two at $3,000.00 each; and five at $2,700.00 each: In 1943, two at $4,500.00 each; two at $4,200.00 each; two at $3,600.00 each; two at $3,000.00 each; and five at $2,700.00 each: And in 1944, two at $4,500.00 each; three at $4,200.00 each; two at $3,600.00 each; two at $3,000.00 each; and five at $2,700.00 each. It is our opinion, therefore, that all of said assistants and the salaries paid them were duly authorized under the law.

Senate Bill No. 279, Ch. 85, p. 122, Vernon's Texas Session Law Service, which became effective on April 19, 1945, applies to counties having a population of 500,000 or more and includes Harris County. Section 6 of said Act sets out the number of assistant criminal district attorneys that can be appointed in said county and the amounts of the salaries that can be paid.

Harrison County. The 1930 population of this county was 48,937. Under Articles 3883.3 and 3891, the county attorney could have been paid as much as $4,250.00 per annum. Under Article 3902.3, the first assistant county attorney could have been paid not to exceed $2,100.00, and other assistants not to exceed $1,800.00 per annum each.

Hidalgo County. We find no authority for a criminal district attorney in this county, therefore, what has been heretofore said in connection with Articles 326k-9, 326k-11 and 326q is also applicable here, as there were no other statutes authorizing a criminal district attorney in this county.

Article 3912e-7, which became effective July 5, 1941, provides that the Commissioners' Courts in all counties having a population of not less than 100,000 and not more than 190,000, according to the last preceding Federal Census, in fixing the salaries to be paid the officers named in Section 13 of Chapter 465 of the Acts of the Second Called Session of the Forty-fourth Legislature, (Art. 3912e, Sec. 13), where such salaries are determined in compliance with the laws which existed on August 24, 1935, and are based upon population, shall compute and fix the salaries of such officers at the maximum amount which could have been paid under the laws existing on August 24, 1935, according to the Federal Census of 1940, and thereafter according to the last preceding Federal Census.

The population of this county in 1940 was 106,059. Under Articles 3883.5 and 3891, the county attorney could have been paid $5,500.00 per annum. Under Article 3902.5, the first assistant could have been paid $2,600.00 per annum and other assistants $2,300.00 per annum each.

Hill County. No criminal district attorney has been authorized for this county, and we again refer to the opinions and statements hereinbefore referred to, and especially to the case of Hill County vs. Sheppard, 178 S. W. (2d) 261, by the Supreme Court, which holds that the statute authorizing a criminal district attorney for this county is invalid.

The population of Hill County in 1930 was 43,036. Under Articles 3883.3 and 3891, the county attorney could have been paid $4,250.00. The 1940 population was 38,355 and under Article 3912e, Section 13, he could have been paid an additional 1% for each year, since the assessed valuations for 1941, 1942 and 1943 were $20,430,520.00, $20,438,098.00 and $20,357,450.00, respectively. Under Article 3902.3, the first assistant county attorney could have been paid not to exceed $2,100.00.

Jefferson County. The Criminal District Court of this county was created and established by Article 52-160 of the Code of Criminal Procedure of the State of Texas, and Section 11 thereof provides that the county attorney of Jefferson County shall be county attorney of this Criminal District Court.

The population of this county in 1940 was 145,329, therefore, it would be governed by Article 3912e-7 and what has been hereinabove said as to Hidalgo County will also apply here as to the application of this Article.

Under Articles 3883.5 and 3891, the county attorney could have been paid $5,500.00 per annum. Under Article 3902.5, the first assistant could have been paid $2,600.00 per annum and other assistants $2,300.00 per annum each.

A Special Federal Census was announced for Jefferson County on June 15, 1943, showing the population of this county to be 191,942. Article 3912e, Section 19, provides that "Provisions of this Section shall apply to and control in each county in the State of Texas having a population in excess of one hundred and ninety (190,000) thousand inhabitants, according to the last preceding Federal Census." Therefore, the salaries of the county attorney of Jefferson County and his assistants from and after June 15, 1943, are subject to the provisions of said Section.

Article 3912e, Section 19(d), provides that the officers therein named, including the "district attorney or criminal district attorney," as the case may be, shall receive a salary of $6,500.00 per annum, but no salary is provided therein for a county attorney in a county having a population in excess of 190,000. Since the county attorney of Jefferson County is the county attorney for the Criminal District Court of said county and performs the duties of district attorney, or criminal district attorney, it is our opinion that he

is entitled to the compensation prescribed for the district attorney or criminal district attorney, under the rules of law laid down in our Opinion No. 0-3158 hereinabove referred to. It is our opinion that he was and is entitled to a salary of $6,500.00 from and after June 15, 1943. This holding also has support in the former law, in that it is provided in Articles 3883.6 and 3891 that, in counties containing as many as 150,001 or more inhabitants, the district or criminal district attorney or county attorney can be paid as much as $6,500.00 per annum.

Under Article 3902.5, the first assistant could have been paid not to exceed $2,600.00 per annum and other assistants could have been paid not to exceed $2,300.00 per annum each to June 15, 1943. After June 15, 1943, the appointment of assistants to Criminal District Attorneys in Jefferson County, or to the County Attorney, and the amounts of their salaries, is governed by Article 3912e, Section 19(f), which provides for nine assistants to be paid the following salaries: two at $4,500.00 each; two at $4,200.00 each; one at $3,600.00; one at $3,000.00; and three at $2,700.00 each.

It is further provided in said Section 19(f) that should a district or criminal district attorney be of the opinion that the number of assistants, etc., is inadequate for the efficient performance of the duties of his office, with the advice and consent of the Commissioners' Court, he may appoint additional assistants and fix their salaries as follows: one not to exceed $4,250.00; one not to exceed $3,600.00; one not to exceed $3,000.00; and two not to exceed $2,700.00 each.

Your attention is also directed to House Bill No. 855, Ch. 307, p. 505, Vernon's Texas Sessions Law Service, which became effective June 4, 1945, and which provides that the county attorney in counties having a population of more than 190,000 inhabitants according to the last preceding Federal Census, where there is no resident district attorney or criminal district attorney, shall receive the same salary as provided for district attorneys or criminal district attorneys in Section 1-a, Senate Bill No. 374, Ch. 26, Acts of the Forty-fifth Legislature, Regular Session, 1937; and said county attorneys are authorized to appoint assistants and employees in the same manner as is provided for district attorneys or criminal district attorneys under the provisions of Section 1, House Bill No. 148, Ch. 68, Acts of the Forty-fifth Legislature, Second Called Session, and that such assistants shall be compensated as provided in said Section 1 of House Bill No. 148.

The first Act referred to is Article 3912e, Section 19(d), which has applied since June 15, 1943, and the salary of the county attorney so provided for, is $6,500.00 per annum. The other Act referred to is Article 3912e, Section 19(f), and authorizes the same number of assistants as has been authorized in this county since June 15, 1943, and said assistants can be paid the same salaries as have been authorized to be paid since said date.

You refer to the fact that the chief clerk employed by the criminal district attorney of this county in 1942 and 1943 was not an attorney. There is no law requiring a chief clerk to be an attorney, but under the opinion

of this department referred to by you, dated September 15, 1936, the salary of such chief clerk should not have been used as a basis for the apportionment by the State here under consideration.

We enclose herewith a copy of our Opinion No. O-6499 holding that the Special Federal Census of June 15, 1943, governs in fixing the amounts of salaries after that date in Jefferson County.

Kaufman County. The population of this county in 1930 was 40,905. Under Articles 3883.3 and 3891, the county attorney could have been paid $4,250.00 per annum. Under Article 3902.3, the first assistant county attorney could have been paid not to exceed $2,100.00.

Lamar County. The population of this county in 1930 was 48,529. Under Articles 3883.3 and 3891, the county attorney could have been paid $4,250.00. The 1940 population was 50,425, and the assessed valuations for 1941, 1942 and 1943 were $21,278,295.00, $21,653,595.00 and $21,817,110.00, respectively. Therefore, under Article 3912e, Section 13, the county attorney could have been paid an additional 2% of $4,250.00 for each of the years 1942, 1943, and 1944. Under Article 3902.3, the first assistant could have been paid not to exceed $2,100.00 and other assistants not to exceed $1,800.00 per annum each.

Limestone County. The 1930 population was 39,497. Under Articles 3883.3 and 3891, the county attorney could have been paid $4,250.00 per annum. The 1940 population was 33,781 and the assessed valuations for 1941, 1942, and 1943 were $16,529,610.00, $15,607,655.00, and $16,176,100.00, respectively, which, under Article 3912e, Section 13, would have authorized the salary of the county attorney to have been increased 2%, 1%, and 2%, respectively, for the years 1942, 1943, and 1944. Under Article 3902.3, the first assistant county attorney could have been paid not to exceed $2,100.00. We enclose herewith copy of our Opinion No. O-2560 which deals with the proper method of computing salaries of county and district officials in this county.

McLennan County. This county was at no time authorized to have a criminal district attorney, and what has hereinbefore been said as to the invalidity of the statutes authorizing criminal district attorneys is also applicable here.

The population of this county in 1940 was 101,898, therefore, it would be governed by Article 3912e-7 and what has been hereinbefore said as to Hidalgo and Jefferson Counties as to the application of said Article also applies here.

Under Articles 3883.5 and 3891, the county attorney could have been paid $5,500.00 per annum. Under Article 3902.5, the first assistant could have been paid not to exceed $2,600.00 per annum and other assistants not to exceed $2,300.00 per annum each.

Milam County. There was no statute authorizing a criminal district attorney for this county, and what has heretofore been said relative to such officials not being authorized also applies here. The 1930 population of this county was 37,915. Under Articles 3883.3 and 3891, the county attorney could have been paid as much as $4,250.00 per annum. The 1940 population was 33,120 and under Article 3912e, Section 13, he could have been paid an additional sum of 1% of said salary for each of said years, since the assessed valuations for 1941, 1942 and 1943 were $15,376,735.00, $15,423,512.00, and $15,581,045, respectively.

Navarro County. This county was not authorized to have a district attorney and what has been heretofore said as to criminal district attorneys also applies here, if said county was considered as having been subject to the statutes referred to. The population of this county for 1930 was 60,507. Under Articles 3883.4 and 3891, the county attorney could have been paid as much as $4,750.00. The 1940 population was 51,308 and under Article 3912e, Section 13, he could have been paid an additional sum of 1% of said amount for each of the years inquired about, since the assessed valuations for the years 1941, 1942 and 1943 were $20,083,293.00, $20,090,547.00, and $20,608,666.00, respectively. Under Article 3902.3, the first assistant could have been paid as much as $2,100.00 per annum and other assistants as much as $1,800.00 per annum. We also hand you herewith a copy of our Opinion No. 0-6484, which deals with the salaries of the county attorney of this county. As to whether all those referred to as assistants were actually entitled to be carried as such would depend upon the services performed and, if they were not actually assistant county attorneys, they should not have been used as a basis for this apportionment from the State.

Red River County. The 1930 population of this county was 30,923. Under Articles 3883.3 and 3891, the county attorney could have been paid as much as $3,500.00.

Robertson County. The 1930 population of this county was 27,240. Under Articles 3883.2 and 3891, the county attorney could have been paid as much as $3,500.00 per annum.

Rusk County. The 1930 population of this county was 32,484. Under Articles 3883.2 and 3891, the county attorney could have been paid as much as $3,500.00 per annum. The 1940 population was 51,023 and under Article 3912e, Section 13, he could have been paid an additional 72%, 70% and 66%, respectively, for the years 1942, 1943 and 1944, since the assessed valuations for 1941, 1942 and 1943 were $91,210,805.00, $89,342,105.00 and $85,367,894.00, respectively. Under Article 3902.2 the first assistant county attorney could have been paid as much as $2,000.00 per annum and other assistants as much as $1,700.00 per annum.

Tarrant County. The Criminal District Court for Tarrant County was created and established by Article 52-63 -- 52-87 of the Code of Criminal Procedure of the State of Texas, and Subdivision 52-81 provides for a criminal district attorney. The 1940 population of Tarrant County was 225,521, therefore

the salary of the criminal district attorney of said county is governed by Article 3912e, Section 19(d), which authorizes the sum of $6,500.00 for each of the years inquired about in counties having a population in excess of 190,000.

The salaries paid to the various assistant criminal district attorneys for the years named vary in amount, and we are unable to charge any of said salaries against any particular person, but Article 3912e, Section 19(f), which applies to counties having a population in excess of 190,000 authorizes all of the salaries in the schedules submitted, except as hereinafter set forth.

You show in your schedule fifteen assistant criminal district attorneys for 1942, who were paid the following salaries: two at $4,500.00 each, one at $3,600.00, one at $3,300.00, two at $2,880.00, two at $2,520.00, one at $2,400.00, one at $2,340.00, three at $2,100.00, one at $1,920.00, and one at $1,800.00. You show twelve for 1943 who were paid the following salaries: two at $4,500.00 each, one at $3,600.00, one at $3,000.00, one at $2,880.00, two at $2,640.00, one at $2,520.00, two at $2,400.00, one at $2,280.00, one at $2,100.00, and eleven for 1944 who were paid the following salaries: one at $4,500.00, two at $3,600.00, one at $3,000.00, one at $3,180.00, two at $2,700.00, and four at $2,880.00. Said Article 3912e, Section 19(f), authorizes the criminal district attorney to appoint nine assistant criminal district attorneys and pay them the following salaries: two at $4,500.00, two at $4,200.00, one at $3,600.00, one at $3,000.00, and three at $2,700.00. In addition, if he be of the opinion that the number of assistants is insufficient, he may, with the advice and consent of the Commissioners' Court, appoint additional assistants and pay them the following salaries: one not to exceed $4,250.00, one not to exceed $3,600.00, one not to exceed $3,000.00, and two not to exceed $2,700.00. It is our opinion, therefore, that salaries paid said assistants during the years mentioned were authorized under the law even though the amounts paid were in some cases less than the amount authorized, except that fifteen were used and paid in 1942 when only fourteen were authorized.

House Bill No. 241, Ch. 74, p. 106, Vernon's Texas Session Law Service, applies to counties having a population of 225,000 or more and less than 500,000 according to the last preceding Federal Census and would include Tarrant County. This law authorizes the district attorney to be paid a salary of $7,400.00.

House Bill No. 849, Ch. 271, p. 428, of said Law Service applies to counties having a population of 225,000 or more and less than 500,000 and also includes Tarrant County. This law fixes the salary of the criminal district attorney at $6,500.00 per annum up to January 1, 1946, and thereafter at $7,400.00 per annum. Under the rules of law set out in our Opinion No. 0-6728 hereinabove referred to, House Bill No. 849 would govern the salary of the criminal district attorney in Tarrant County, instead of House Bill No. 241, since House Bill No. 241 was approved and became effective on April 10, 1945, and House Bill No. 849 was filed by the Governor on May 30, 1945, and became effective ninety days after June 5, 1945, or on September 3, 1945.

Therefore, House Bill No. 849 repeals House Bill No. 241 insofar as they are in conflict, the conflict being that House Bill No. 241 provides for a salary of $7,400.00 for the district attorney while House Bill No. 849 provides that said salary shall be only $6,500.00 to January 1, 1946, and $7,400.00 thereafter. Therefore, in connection with the salary of the criminal district attorney of Tarrant County, it will be $6,500.00 per annum to April 10, 1945; $7,400.00 per annum from April 10, 1945 to September 3, 1945; $6,500.00 per annum from September 3, 1945, to January 1, 1946; and thereafter $7,400.00 per annum.

While "District Attorney" is named in House Bill No. 241 and "District Attorney" and "Criminal District Attorney" in House Bill No. 849, it is clear that both of said bills were intended to apply to "Criminal District Attorney", since all counties within the population bounds named have such official.

Van Zandt County. The 1930 population of this county was 32,315. Under Articles 3883.2 and 3891, the county attorney could have been paid as much as $3,500.00. The 1940 population was 31,155 and under Article 3912e, Section 13, he could have been paid an additional sum of 10% of said salary for each of said years, since the assessed valuations for the years 1941, 1942 and 1943 were $24,067,999.00, $24,064,984.00, and $24,296,412.00, respectively. Under Article 3902.2 the first assistant county attorney could have been paid not to exceed $2,000.00.

Williamson County. This county was at no time authorized to have a criminal district attorney and what has heretofore been said as to the invalidity of laws providing for a criminal district attorney in a county of this size is also applicable here. The 1930 population of this county was 44,146. Under Articles 3883.3 and 3891, the county attorney could have been paid as much as $4,250.00. The 1940 population was 41,698 and under Article 3912e, Section 13, the county attorney could have been paid an additional 2% for 1942, 2% for 1943, and 3% for 1944, since the assessed valuations for the respective preceding years were $21,206,110.00, $21,799,940.00, and $22,195,150.00. Under Article 3902.3 the first assistant could have been paid not to exceed $2,100.00 per annum, and other assistants not to exceed $1,800.00.

A county attorney is required to be a duly licensed attorney at law, and an assistant county attorney must have the same qualifications as the county attorney. (Articles 331 and 332, V. A. C. S.)

The State Bar Act (Art. 320a-1), which became effective in 1939, provides in part as follows:

"Sec. 2. There is hereby created the State Bar, which is hereby constituted an administrative agency of the Judicial Department of the State, with power to contract with relation to its own affairs and which may sue and be sued and have such other powers as are reasonably necessary to carry out the purposes of this Act.

"Sec. 3. All persons who are now or who shall hereafter be licensed to practice law in this State shall constitute and be members of the State Bar, and shall be subject to the provisions hereof and the rules adopted by the Supreme Court of Texas; and all persons not members of the State Bar are hereby prohibited from practicing law in this State.

"Within the meaning of this Section, all persons furnishing evidence of or complying with any of the following provisions shall be deemed as now licensed to practice law within this State, viz:

"(a) That he is now enrolled as an attorney-at-law before the Supreme Court of this State.

"(b) A license or the issuance of a license by the Board of Legal Examiners of this State authorizing him to practice law within this State.

"(c) A license or the issuance of a license to practice law within this State by any authority, which, at the time of the issuance thereof, was authorized by the laws of this State, then in effect, to issue the license."

Section 4 of said State Bar Act authorizes the Supreme Court to prepare and propose rules and regulations for disciplining, suspending and disbarring attorneys at law, which said rules and regulations were to be submitted to the members of the State Bar and a majority vote was required to adopt any or all of said rules and regulations. Said Act also authorized the Supreme Court to prescribe a fee not exceeding Four Dollars ($4.00) per annum per person to be paid to the Clerk of the Supreme Court.

The rules governing the State Bar, which were approved in accordance with the above statutes, provide that the membership fee prescribed by the Supreme Court shall be due and payable by each member to the Clerk of the Supreme Court on June 1st of each fiscal year, the fiscal year beginning June 1st and ending May 31st of the next succeeding year; that a member in default of payment of said fee for sixty days after it was due shall be regarded as delinquent and shall be given written notice thereof by the Clerk of the Supreme Court. Then, if the delinquent member fails to pay such fee within thirty days after said notice, he shall cease to be a member. Provision is also made that if at the end of ninety days after June 1st a member has not paid to the Clerk membership due for the current year the Clerk may strike from the rolls of the State Bar the name of the delinquent member.

You state that some persons have been used as assistant county attorneys whose names do not appear in the Texas Legal Directory, or the record of the Supreme Court, as being licensed and practicing attorneys. We do not think that the failure to find the names of said assistants in the Legal Directory would be sufficient evidence to show that they were not authorized to hold such official positions. As to the names of such assistants not being found in the records of the Supreme Court, we think it would be necessary

to show that the hereinabove referred to rules had been followed and the names of such assistants dropped from the membership rolls in accordance therewith before it could be said that said assistants should not be considered in connection with the apportionment here under consideration.

If the abstracters, tax deputies and clerks referred to by you were licensed attorneys, they should be carried as assistants but, if they were merely what such names imply, then they should not be considered in connection with making said apportionments.

As to the use of the names of stenographers, bookkeepers and investigators as "assistants" in arriving at said apportionment, we agree with the opinion of this department referred to by you, addressed to the Comptroller under date of September 15, 1936, and it is our opinion that such ruling should be applied to any of such employees whose names appear in the schedule submitted by you.

Article 3912e, Section 13(b), which provides for the apportionment here under consideration, does not fix any time for the payment of such apportionment into the County Officers' Salary Fund of each county, but we suggest that, since the Comptroller must necessarily deal with two separate appropriations in each calendar year, he handle same as follows:

Make the apportionments at the end of each four months' period and after proper statements have been made showing the actual sums paid out, the apportionments to be made after December 31st of any year to be for the preceding four months and to adjust any discrepancies or errors in the allocation of the apportionments during the year ending on that date. The other times for the allocation of such apportionments can be after April 30th and August 31st of each year, and to be made only after receipt of proper statements as to the sums actually paid out by each of said counties.

We find two other counties that were eligible to share in these apportionments for the years 1942, 1943 and 1944, as well as future apportionments, viz: Montague County and Parker County. The 1940 populations of these counties were 20,442 and 20,482, respectively, and each of them had and has a county attorney who performs and is performing the duties of district attorney.

As to the effect of the Special Federal Census in Jefferson County on that county's apportionment, we refer you to our Opinion No. 0-6499, a copy of which is herewith enclosed. The apportionment of this county will now be made on the basis of its having a population in excess of 190,000.

We are unable to find any statute authorizing the Comptroller to make adjustments of these apportionments where there have been overpayments or underpayments in past years. It is our opinion that where any county or counties have been underpaid in allocations prior to the calendar year 1945, such error or errors cannot be adjusted out of a current or future apportionment, as all such appropriations must be used for the year for which they are appropriated, and it will be necessary for the Legislature to make a specific

appropriation for such purpose. Where any county has received more in past apportionments than it was entitled to, it is our opinion that the State would have a claim against such county or counties for the sum or sums so received.

Your attention is directed to the following law passed by the last Legislature which will likely affect the amount of these apportionments in the future:

Senate Bill No. 123, Chap. 179, p. 244, Vernon's Texas Sessions Law Service, which became effective May 9, 1945, and which amends Articles 3891, 3902, 3912e, Section 13 and 3912e, Section 15, authorizes the Commissioners' Court, under the conditions and as therein set forth, to increase the salaries of the officials and deputies therein named as much as 25%. This would include some of the officials and assistants here being considered.

Yours very truly,

APPROVED OCT 31, 1945 .

ATTORNEY GENERAL OF TEXAS

/s/ Carlos C. Ashley

FIRST ASSISTANT
ATTORNEY GENERAL

By  /s/ Jas. W. Bassett
        Jas. W. Bassett
            Assistant

JWB:LJ:LM
encls.

APPROVED
OPINION
COMMITTEE
BY /s/ BWB
CHAIRMAN