**EL PASO ELECTRIC COMPANY; Coopers & Lybrand; Kemp, Smith, Duncan & Hammond, P.C.; Maury Page Kemp and Jean Jones Kemp, Appellants,**

v.

**The STATE BOARD OF INSURANCE; Texas Department of Insurance; and Georgia D. Flint, as Permanent Receiver, Appellees.**

No. 03–93–00591–CV.

Court of Appeals of Texas, Austin.

July 19, 1995.

Rehearing Overruled Aug. 16, 1995.

Robert C. Walters, Vinson & Elkins, Dallas, for Coopers & Lybrand.

Fred B. Werkenthin, Small, Craig & Werkenthin, Austin, for El Paso Elec. Co.

Randy Lee, Richard, Lee, Rowley, Cobb & Hall, P.C., El Paso, for Maury Page Kemp and Jean Jones Kemp.

Jack D. Maroney, Maroney, Crowley & Bankston, Austin, for Kemp, Smith, Duncan & Hammond, P.C.

Dan Morales, Atty. Gen., David C. Mattax, Asst. Atty. Gen., Finance Div., Austin, for appellees.

Before POWERS, ABOUSSIE and JONES, JJ.

ABOUSSIE, Justice.

El Paso Electric Company; Coopers & Lybrand; Kemp, Smith, Duncan & Hammond, P.C.; Maury Page Kemp and Jean Jones Kemp (collectively, "El Paso Electric" or "appellants") appeal from a final order denying their claims under section 105.002 of the Civil Practices and Remedies Code against appellees the State Board of Insurance, the Texas Department of Insurance, and Georgia D. Flint, as Permanent Receiver for First Service Life Insurance Company (collectively, the "State Board of Insurance").[1] See Tex.Civ.Prac. & Rem.Code Ann. § 105.002 (West 1986). We will affirm the trial court's judgment.

## BACKGROUND

In the mid–1980s, El Paso Electric purchased millions of dollars worth of annuities from First Service Life Insurance Company ("First Service"). As a condition of purchase, El Paso Electric required that First Service pledge as collateral the United States Treasury instruments First Service purchased with the proceeds of its sale of annuities to El Paso Electric. This lawsuit originated as El Paso Electric's effort to obtain the collateral.

Due to mounting financial problems, the State Board of Insurance ("SBI") placed

First Service into conservatorship on June 13, 1988. Six months later, a temporary receiver was appointed, and then on January 18, 1989, SBI placed First Service into receivership. The trial court appointed SBI's liquidator as permanent receiver to act on behalf of First Service. See Tex.Ins.Code Ann. art. 21.28, § 2(a) (West Supp.1995).

Soon after SBI placed First Service into conservatorship, El Paso Electric requested that SBI return to El Paso Electric the treasury instruments securing its remaining First Service annuities. SBI refused, contending that the annuities were unlawfully collateralized. Shortly thereafter, on September 26, 1988, El Paso Electric sued First Service for a declaratory judgment that El Paso Electric possessed a valid, perfected, and enforceable security interest in the treasury instruments.

On September 29, 1988, the conservator for First Service filed a counterclaim alleging that El Paso Electric had conspired to defraud First Service annuitants of millions of dollars. The permanent receiver later amended the counterclaim to add as defendants the law firm of Kemp, Smith, Duncan & Hammond, P.C.; the accounting firm of Coopers & Lybrand; and Maury Page Kemp and Jean Jones Kemp, alleging they had conspired with El Paso Electric to defraud First Service annuitants. El Paso Electric moved for partial summary judgment on December 10, 1991. The trial court granted the partial summary judgment on May 18, 1992, ruling that the annuity purchases were lawfully collateralized. On October 16, 1992, First Service's receiver voluntarily dismissed with prejudice its counterclaims against appellants. On December 17, 1991, shortly after it filed its motion for partial summary judgment, El Paso Electric filed a motion complaining of a frivolous claim under chapter 105 of the Civil Practice and Remedies Code.[2] Appellants alleged in their chapter

1. In 1991, the Legislature reorganized the regulation of insurance in Texas, substituting the Department of Insurance for the State Board of Insurance. See Act of May 27, 1991, 72d Leg., R.S., ch. 242, § 1.01, 1991 Tex.Gen.Laws 939, 939 (Tex.Ins.Code Ann. art. 1.01A, since amended). Because the alleged misconduct in this cause occurred before 1991, we refer to the

department responsible for regulating insurance as the "State Board of Insurance" or "SBI."

2. Kemp, Smith, Duncan & Hammond filed its chapter 105 motion on August 17, 1992; Maury Page Kemp and Jean Jones Kemp filed their motion on August 26, 1992; and Coopers & Lybrand filed its motion on September 11, 1992.

105 motions that SBI, acting first through First Service's conservator and later through First Service's appointed receiver, brought and maintained frivolous, unreasonable, and unfounded claims against them. Chapter 105 requires that state agencies which assert causes of action found to be frivolous reimburse their adversaries for their attorney's fees. *See* Tex.Civ.Prac. & Rem.Code Ann. §§ 105.001–.004 (West 1986).[3]

On April 5, 1993, SBI filed an amended motion to intervene and to strike appellants' chapter 105 motions. SBI alleged that the act of First Service's receiver in filing the conspiracy counterclaims cannot be construed as the act of an executive branch "state agency" as defined in chapter 105.[4] On September 7, 1993, the trial court granted SBI's motion to strike and denied appellants' claims for attorney's fees made pursuant to their chapter 105 motions. The court reasoned:

> As a matter of law, neither (1) the Conservator for the State Board of Insurance, when acting as Conservator for First Service Life Insurance Company ... nor (2) the State Liquidator for the State Board of Insurance, when acting as Receiver for First Service Life Insurance Company ... were or are a "State Agency" under Section 105.001(3) of the Texas Civil Practice & Remedies Code....

The trial court never determined whether the dismissed claims had merit or were frivolous. El Paso Electric appeals from this limited order.

**3.** Section 105.002 states:
A party to a civil suit in a court of this state brought by or against a state agency in which the agency asserts a cause of action against the party, either originally or as a counterclaim or cross claim, is entitled to recover, in addition to all other costs allowed by law or rule, fees, expenses, and reasonable attorney's fees incurred by the party in defending the agency's action if:
(1) the court finds that the action is frivolous, unreasonable, or without foundation; and
(2) the action is dismissed or judgment is awarded to the party.
Tex.Civ.Prac. & Rem.Code Ann. § 105.002.

**4.** Section 105.001 defines "state agency" as

## DISCUSSION AND HOLDING

■ In two points of error, El Paso Electric complains that the trial court erred in holding that claims prosecuted by SBI, acting through First Service's conservator and receiver, were not claims of a "state agency" as defined under section 105.001. El Paso Electric contends that SBI, when acting as conservator and receiver, meets all three requirements of section 105.001(3): it is part of the executive branch of the government, is created by statute, and has statewide jurisdiction. *See* Tex.Civ.Prac. & Rem.Code Ann. § 105.001(3). Even assuming the conservator and receiver fulfilled the last two prongs of section 105.001(3) when prosecuting claims against El Paso Electric, we conclude they were not acting as a state agency because, when prosecuting claims against El Paso Electric, they were not acting on behalf of the executive branch of government.

■ Despite taking a contrary position in the trial court, El Paso Electric essentially contends on appeal, citing *Morrison v. Olson*, 487 U.S. 654, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988), that both the receiver and the conservator were acting as agents of the executive branch of government because they performed their duties under SBI's discretion and power to remove them from office. Nevertheless, we conclude that for purposes of the instant cause, the scope of SBI's discretionary authority or power of removal is not the relevant criterion for determining whether an entity designated by SBI likewise acts as a governmental agency. Instead, the determinant factor is the capacity in which the entity performs the relevant conduct.[5] *See*

a board, commission, department, office, or other agency that:
(A) is in the executive branch of the government;
(B) was created by the constitution or a statute of this state; and
(C) has statewide jurisdiction.
*Id.* § 105.001(3).

**5.** Appellants argue that the Texas Supreme Court's *Betts* trilogy is instructive on the issue of whether the executive or judicial branch exercises control over receiverships. *See State Bd. of Ins. v. Betts*, 158 Tex. 624, 315 S.W.2d 286 (1958); *State Bd. of Ins. v. Betts*, 158 Tex. 612, 315 S.W.2d 279 (1958); *State Bd. of Ins. v. Betts*, 158 Tex. 83, 308 S.W.2d 846 (1958). Moreover, SBI acknowledges that while a receivership is

*Eagle Life Ins. Co. v. Hernandez,* 743 S.W.2d 671, 672 (Tex.App.—El Paso 1987, writ denied), *overruled on other grounds, Grand Prairie Indep. Sch. Dist. v. Southern Parts Imports, Inc.,* 813 S.W.2d 499, 500 n. 4 (Tex. 1991) (noting that officer's actions as receiver could not be actions of officer of governmental entity); *see also Weber v. Walker,* 591 S.W.2d 559, 563 (Tex.Civ.App.—Dallas 1979, no writ) (distinguishing appeal by county, as represented by commissioners and county judge, from appeal by commissioners as private citizens by examining nature of relief sought in petition). El Paso Electric itself asserted in its response to a motion to disqualify its trial counsel filed on March 7, 1989, "A receiver does not act on his own behalf or for himself but on behalf of the company placed in receivership and its estate." In the instant cause, the receiver and the conservator necessarily acted on behalf of SBI in an agency capacity or on behalf of First Service in a private representative capacity.

The Insurance Code,[6] describing the powers and duties of receivers and conservators, indicates the capacity in which receivers and conservators act. The Insurance Code provides that whenever a receiver must take charge of an insurer's assets, the liquidator SBI designates will be the receiver. *See* Tex.Ins.Code Ann. art. 21.28, § 2(a) (West Supp.1995). "The receiver shall forthwith take possession of the assets of such insurer and deal with the same in the person's own name as receiver or in the name of the insurer as the court may direct." *Id.* In conducting business, the receiver shall take steps necessary "to conserve the assets and protect the rights of policyholders and claimants for the purpose of liquidating, rehabili-

tating, reinsuring, reorganizing or conserving the affairs of the insurer." *Id.* § 2(e).

In short, the Insurance Code provides that a receiver, when appointed, "cease[s] to act as liquidator."[7] *Williams v. Knox,* 207 S.W.2d 151, 154 (Tex.Civ.App.—Galveston 1947, writ ref'd n.r.e.). The liquidator essentially becomes the "corporation itself for all purposes of winding up its affairs." *See Carpenter v. Pink,* 133 Tex. 82, 124 S.W.2d 981, 987 (1939) (describing New York receiver, reasoning that insolvent corporation acts through agent who is vested with legal title of all corporation's properties). When the liquidator acts as receiver, it "stands in the shoes of the insolvent corporation, not those of the Board of Insurance Commissioners." *Eagle Life,* 743 S.W.2d at 671.

In *Eagle Life,* the court of appeals addressed the issue of whether the liquidator of the State Board of Insurance, when acting as receiver for an insurance company, was a governmental agent for purposes of section 6.001 of the Civil Practice and Remedies Code. *See* Tex.Civ.Prac. & Rem.Code Ann. § 6.001 (West 1986 & Supp.1995) (exempting certain governmental entities from filing bond for various court costs). The court held that the liquidator was required to file bond because while he served as receiver for a corporation in liquidation, he was not acting as an officer of a governmental entity. *Eagle Life,* 743 S.W.2d at 671–72. The court noted that the case did not present the situation of one branch of government taxing another branch because a receiver's compensation and expenses are not paid by a governmental entity but "are to be claims against the assets of the [insolvent] corporation." *Id.* at 672. We agree with the trial court that, for

created by court order, a conservatorship is not. Because we base our opinion on the capacity in which the conservator and the receiver acted when they filed the conspiracy counterclaims, neither the *Betts* trilogy nor the fact that a conservatorship is not judicially supervised controls the outcome of this cause.

**6.** We cite to the current provisions of the Insurance Code because, although several changes have been made in the relevant provisions of the Insurance Code during the pendency of this suit,

none are substantive or significant for our purposes.

**7.** We note that El Paso Electric adopted this position in its trial brief in response to the motion to disqualify, stating, "When the person serving in the position of State Insurance Liquidator is appointed receiver of an insolvent insurance company, pursuant to section 2(a), *he ceases to act as the Liquidator, an officer in the executive branch,* and instead becomes the agent of the receivership Court to act on behalf of the estate." (Emphasis added.)

purposes of the instant cause, the liquidator, when acting as the statutorily appointed receiver for First Service, was not acting as a "state agency" under chapter 105.

■ Similarly, we conclude that the SBI appointee was not acting as a "state agency" when serving as conservator for First Service.[8] The Insurance Code provides that SBI may appoint a conservator to rehabilitate a failing insurance company. Tex.Ins. Code Ann. art. 21.28–A, § 5 (West Supp. 1995). The conservator, in carrying out its powers and duties as set forth in the Insurance Code, like the receiver, stands in the shoes of the insolvent corporation and acts in its behalf to further the legislature's purpose of conservatorship: the protection of an insurer's assets pending a determination of whether the insurer should be placed into receivership. *See id.* § 1. Upon appointment, the conservator, like a receiver,

> shall immediately take charge of such insurance company and all of the property, books, records, and effect thereof, and conduct the business thereof, ... and shall be empowered to take all necessary measures to preserve, protect, and recover any assets or property of such insurance company, including claims or causes of action belonging to or which may be asserted by such insurance company, and to deal with the same in [its] own name as conservator, and shall be empowered to file, prosecute, and defend any suit or suits which have been filed or which may thereafter be filed by or against such insurance company

which are deemed by the conservator to be necessary to protect all of the interested parties or any property affected thereby.

*Id.* § 5; *see also id.* § 3 (allowing conservator to take charge of insolvent insurance company "and all of the property and effects thereof"). The conservator, in charge of the insolvent company's possessions, is thus empowered to sue on behalf of the insolvent insurance company when necessary to protect the interested parties or any affected property. However, when doing so, it is not suing on behalf of SBI as such, but, rather, as a representative of the estate.[9] *See id.* § 5. Like the costs associated with a receivership, the costs associated with a conservatorship are chargeable to the insurance company, not the State. *Id.* ("The cost incident to the ... conservator's service ... shall be a charge against the assets and funds of the insurance company...."). Accordingly, the conservator, like the receiver, effectively becomes the insolvent insurance company, representing the insurer's interests when it files lawsuits in a private, representative capacity rather than a state agency capacity.

■ Moreover, the purposes of chapter 105 would not be met by defining the receiver or conservator as a state agency within the meaning of chapter 105. As a statutory waiver of sovereign immunity, chapter 105 is to be strictly construed. *Dallas County Child Welfare Unit v. Black*, 812 S.W.2d 620, 623 (Tex.App.—Dallas 1991), *rev'd on other grounds*, 835 S.W.2d 626 (Tex.1992). The Texas Supreme Court has stated that "[t]he

---

8. The conservator's status has little bearing on the relief appellants seek. The conservator never filed a counterclaim against any appellant except El Paso Electric. The conservator filed the action on September 29, 1988; a permanent receiver was appointed January 18, 1989.

9. Appellants argue that any cause of action the conservator or receiver files does not belong to the insolvent company, but to the conservator and receiver in their "official" capacities. We conclude that regardless of which entity owns the cause of action, the lawsuit is filed on behalf of the insolvent insurer; the conservator or receiver will apply any recovery to protect interested parties and property of the insurer, not SBI. As El Paso Electric noted in the court below, "Any judgment rendered against the [r]eceiver would be paid only out of the funds of the estate; any judgment rendered in favor of the receiver

would benefit only the creditors and policyholders of that estate."

This situation, somewhat ironically, can lead to conflicts between the receiver or conservator and SBI, and SBI alleges that such a conflict occurred in the instant cause: after the dismissal of First Service's counterclaims, First Service's receiver settled with El Paso Electric. As part of the consideration for the settlement, El Paso Electric assigned two-thirds of any recovery against SBI from the chapter 105 motions to the claimants of the First Service receivership. Thus, SBI argues, not only did the receiver not defend against the chapter 105 motions, it was actually in First Service's best interest for it not to do so. SBI contends that this is why the Attorney General concluded that SBI should intervene to protect the State of Texas's interests.

purpose of chapter 105 is to afford an aggrieved citizen some remedy from a governmental agency for the misuse of governmental power." *Black v. Dallas County Child Welfare Unit,* 835 S.W.2d 626, 629 n. 5 (Tex. 1992). Because a state agency has access to resources unavailable to most private parties filing or defending a lawsuit, the state agency possesses a potential for abuse. The legislature enacted chapter 105 as a safeguard against such abuse of power. Chapter 105 reasonably would not apply to entities, such as the receiver or conservator in the instant cause, who have no access to such power. All costs incident to either the conservator's or the receiver's service are charged against the funds of the insolvent insurer. *See* Tex. Ins.Code Ann. arts. 21.28–A, § 5; 21.28, § 12(b) (West Supp.1995).[10] Therefore, we conclude that the purposes of chapter 105 would not be served by holding a conservator or receiver liable as a "state agency" under section 105.001.

■ Finally, we note that a party cannot request something of the trial court and then complain that the court committed error in granting the relief. *Northeast Tex. Motor Lines v. Hodges,* 138 Tex. 280, 158 S.W.2d 487, 488 (1942); *Austin Transp. Study Policy Advisory Comm. v. Sierra Club,* 843 S.W.2d 683, 689–90 (Tex.App.—Austin 1992, writ denied); *Bayoud v. Bayoud,* 797 S.W.2d 304, 312 (Tex.App.—Dallas 1990, writ denied). Nor may a party argue a theory on appeal that is different from that presented to the court below. *Austin Transp. Study,* 843 S.W.2d at 689–90. In the court below, El Paso Electric argued in response to the motion to disqualify its trial counsel that when the liquidator is appointed receiver of an insolvent insurance company, "he ceases to act as the liquidator, an officer in the executive branch," and instead becomes the agent of the receivership court who acts on behalf

of the estate.[11] El Paso Electric may not now take a position inconsistent with the one argued to the trial court. Points of error one and two are overruled.

### CONCLUSION

When First Service's conservator and receiver filed counterclaims against appellants, they acted in a private, representative capacity on behalf of First Service rather than in a capacity on behalf of SBI's interests. Accordingly, neither the conservator nor the receiver acted within or on behalf of the executive branch of government and cannot be considered a state agency under the definition of section 105.001(3) of the Civil Practice and Remedies Code. Having overruled both points of error, we affirm the judgment of the trial court.

---

**10.** We recognize that before 1994, the legislature could additionally appropriate funds other than those of insurers being liquidated to be used by receivers and their employees to ensure that liquidation and conservation proceedings could continue without lapse in the absence of any funding from the insurer. *See* Act of May 21, 1965, 59th Leg., R.S., ch. 661, § 1, 1965 Tex. Gen.Laws 1520, 1520–21 (Tex.Ins.Code Ann. art. 21.28, § 12A(a), since expired). This provision

does not change our analysis that the conservator and the receiver, when carrying out their duties to protect the assets of the insolvent insurer, act as representatives of the insolvent insurer, not the state agency.

**11.** No ruling on the motion to disqualify appears in the record, and counsel continued to act.