**EL PASO ELECTRIC COMPANY; Coopers & Lybrand; Kemp, Smith, Duncan & Hammond, P.C.; Maury Page Kemp and Jean Jones Kemp, Petitioners,**

v.

**TEXAS DEPARTMENT OF INSURANCE, Respondent.**

No. 95–0943.

Supreme Court of Texas.

Argued Sept. 5, 1996.

Decided Dec. 13, 1996.

Rehearing Overruled Feb. 21, 1997.

essentially a private capacity on behalf of the insurer and its creditors, affirmed the trial court's refusal to award fees and expenses. 903 S.W.2d 133. Because we conclude that the receiver acted on behalf of the State Board of Insurance for purposes of Chapter 105, we reverse the judgment of the court of appeals and remand this cause to the trial court for further proceedings.

I

El Paso Electric Company purchased $70 million in annuities from First Service Life Insurance Company in the mid–1980s. First Service used this money to acquire United States Treasury instruments, which it pledged as collateral to secure El Paso Electric's annuities. First Service later encountered severe financial problems, and in June 1988 the Commissioner of Insurance appointed a conservator to take charge of the company. *See* TEX.INS.CODE art. 21.28–A, § 5.

Charles T. Newton, Houston, Robert C. Walters, Dallas, Fred B. Werkenthin, Thomas T. Rogers, Austin, Randy Lee, El Paso, Jack D. Maroney, Michael J. Crowley, Austin, for Petitioners.

Thomas H. Watkins, David C. Mattax, Dan Morales, Austin, for Respondent.

PHILLIPS, Chief Justice, delivered the opinion of the Court, joined by HECHT, CORNYN, ENOCH, OWEN, BAKER and ABBOTT, Justices.

Chapter 105 of the Texas Civil Practice and Remedies Code allows a litigant to recover fees and expenses when a state agency brings a frivolous claim. We must decide whether a claim prosecuted by the State Insurance Liquidator, acting in his capacity as receiver for an insolvent insurance company, is a claim by a state agency within the meaning of Chapter 105. The court of appeals, holding that the receiver was acting in

After the conservator disputed the validity of El Paso Electric's security interest,[1] El Paso Electric sued the conservator (as representative for First Service) in the 345th District Court in Travis County, seeking a declaratory judgment that it possessed an enforceable security interest in the Treasury instruments. The conservator counterclaimed, alleging that El Paso Electric had perpetrated a conspiracy to unlawfully collateralize the annuities.

A few months later, in January 1989, First Service was placed into receivership by order of the 53rd District Court of Travis County. As required by the Insurance Code, the court appointed the State Insurance Liquidator as receiver. By operation of law, the receiver succeeded to all property, contracts and rights of action of First Service, including the pending counterclaim against El Paso Electric. The receiver continued prosecuting the counterclaim, even adding claims in February 1990 against the law firm of Kemp, Smith, Duncan & Hammond, the accounting

---

1. The conservator contended that First Service was not licensed to sell annuities in Texas at the time of the El Paso Electric transaction, and that El Paso Electric was aware of this. Accordingly, argued the conservator, the entire transaction was void, including El Paso Electric's purported security agreement. The conservator further contended that the transaction violated article 21.39–A of the Texas Insurance Code, which requires insurers to maintain specified amounts of unencumbered assets.

firm of Coopers & Lybrand, and two former officers of First Service, Maury Kemp and Jean Kemp. The receiver alleged that these defendants participated with El Paso Electric in the purported conspiracy against First Service.

In May 1992, the trial court granted partial summary judgment for El Paso Electric on the principal issues, ruling that its security interest was enforceable and that it had not engaged in an illegal transaction. Five months later, the receiver voluntarily dismissed the counterclaim as to all defendants with prejudice.

Meanwhile, each of the counter-defendants filed a Chapter 105 motion to recover their fees and expenses in defending the counterclaim, contending that it was frivolous and that it was prosecuted by the conservator and receiver "for the State Board of Insurance." The State Board of Insurance (the "Board") intervened in the proceedings to defend against the Chapter 105 motions, contending that the conservator and receiver did not act on behalf of any state agency. The trial court accepted this argument, denying all relief under Chapter 105. The trial court did not reach the issue of whether the counterclaim was in fact frivolous.

The counter-defendants perfected an appeal limited to the Chapter 105 issue. The court of appeals affirmed the trial court's judgment, concluding that the receiver and conservator, in prosecuting the counterclaim, acted in a private representative capacity on behalf of First Service and its creditors, not on behalf of the Board. 903 S.W.2d at 136–37. The counter-defendants then sought writ of error from this Court.

## II

Chapter 105 of the Texas Civil Practice and Remedies Code allows a litigant to recover fees from a state agency under the following circumstances:

> A party to a civil suit in a court of this state brought by or against a state agency in which the agency asserts a cause of action against the party, either originally or as a counterclaim or cross claim, is entitled to recover, in addition to all other costs allowed by law or rule, fees, expenses, and reasonable attorney's fees incurred by the party in defending the agency's action if:
>
> (1) the court finds that the action is frivolous, unreasonable, or without foundation; and
>
> (2) the action is dismissed or judgment is awarded to the party.

TEX.CIV.PRAC. & REM.CODE § 105.002. "State agency" is defined as follows:

> "State agency" means a board, commission, department, office, or other agency that:
>
> (A) is in the executive branch of state government;
>
> (B) was created by the constitution or a statute of this state; and
>
> (C) has statewide jurisdiction.

TEX.CIV.PRAC. & REM.CODE § 105.001(3). The Board and its statutory successor the Department of Insurance (the "Department") are clearly state agencies within this definition.[2] We must determine whether the conduct of the receiver and the conservator is attributable to the Board or the Department for purposes of Chapter 105. We analyze first the role of the receiver, then that of the conservator.

## A

Article 21.28 of the Texas Insurance Code sets forth a comprehensive scheme for the

---

**2.** Prior to 1991, the business of insurance was regulated by the three-member State Board of Insurance and a Commissioner appointed by the Board. *See* TEX.INS.CODE arts. 1.02, 1.09 (Vernon Supp.1990). In 1991, the Legislature created the Department of Insurance, consisting of the Board, the Commissioner, "and other officers and employees required to efficiently implement the purpose of this code...." Act of June 6, 1991, 72nd Leg., R.S., ch. 242, § 1.01, 1991 Tex.Gen.Laws 939. Two years later, the Legislature abolished the Board, providing that "[e]xcept as otherwise provided by law, all references in this code and other statutes of this state to the board, the Board of Insurance Commissioners, the State Board of Insurance, or individual commissioners mean the department or the Commissioner as consistent with the respective duties of the Commissioner or the department under this code...." Act of June 17, 1993, 73rd Leg., R.S., ch. 685, § 1.02, 1993 Tex.Gen.Laws 2559, 2561 (codified as TEX.INS.CODE § 1.01A(c)).

liquidation, rehabilitation, and reorganization of insolvent insurers. Although the Legislature modified this statute during the course of the proceedings in the trial court, the fundamental operation did not change. The 1989 version of article 21.28 provided for the appointment of receivers as follows:

> Sec. 2.(a) Receiver Taking Charge. Whenever under the law of this State a court of competent jurisdiction finds that a receiver should take charge of the assets of an insurer domiciled in this State, *the liquidator designated by the State Board of Insurance as hereinafter provided for shall be such receiver.* The liquidator so appointed receiver shall forthwith take possession of the assets of such insurer and deal with the same in his own name as receiver or in the name of the insurer as the court may direct.

TEX.INS.CODE art. 21.28, § 2(a) (Vernon Supp.1989) (emphasis added). Thus, the receivership court had no discretion to name someone other than the Board's designated liquidator as receiver. *See State Bd. of Ins. v. Betts,* 158 Tex. 612, 315 S.W.2d 279, 283 (1958). This liquidator was appointed by the Board and was subject to removal only by the Board. *See* TEX.INS.CODE art. 21.28, § 12(a) (Vernon Supp.1989). Moreover, the liquidator's compensation, as well as that of any special deputy liquidators, counsel, clerks, and assistants, was determined by the Board. *Id.* § 12(b). While this compensation was generally paid as a priority distribution from the funds of the insolvent insurer, *id.,* the Legislature also provided, until 1994, for general appropriations to assist the liquidator in performing receivership duties. *Id.* § 12A.

The Legislature modified article 21.28 in 1991, eliminating the office of liquidator. *See* Act of Aug. 30, 1991, 72nd Leg., 2nd C.S., ch. 12, 1991 Tex.Gen.Laws 252 (eff. Jan. 1, 1992). Instead, the current version of the statute, effective by the time the receiver dismissed the counterclaim, provides that "the commissioner of insurance or a person designated by the commissioner under contract shall act as receiver." TEX.INS.CODE art. 21.28, § 2(a).

While the term "liquidator" was not eliminated from the statute, it simply became a synonym for "receiver". *See* art. 21.28, § 1(d). The powers and duties of the receiver under the 1992 amendments are, in relevant respects, the same as before.

As with the 1989 version, the court has no discretion under the revised statute to appoint someone other than the Commissioner or the Commissioner's designated special deputy as receiver. The Commissioner controls the activities of any special deputy receivers and may terminate their service at will. *See* TEX.INS.CODE art. 21.28, § 12(h). Also, the Commissioner determines the compensation of the special deputy receivers. *Id.* § 12(b).

Section 12A, providing for legislative appropriations to assist the receiver in performing the receiver's statutory duties, was also carried forward in the 1992 statute, effective until 1994. Moreover, the Legislature created a new subsection providing that the receiver and the receiver's assistants are, for payroll accounting purposes, "employees of the State Board of Insurance." TEX.INS. CODE art. 21.28, § 12A(b).

■ Despite the provisions in both the current statute and the 1989 version placing the receiver under the control of the Board,[3] the Department argues that the receiver for an insolvent insurer assumes a separate legal identity. The Department contends that the receiver essentially acts as a private trustee, representing the interests of the insurer and its creditors, not the interests of the State. As such, the receiver's actions cannot be attributable to the Board for purposes of Chapter 105.

The Department points to the language of article 21.28 commanding the receiver to take charge of the insurer's assets "in the person's own name as receiver or in the name of the insurer," not in the name of the Board or the State. TEX.INS.CODE art. 21.28, § 2(a). The 1989 version further commanded the receiver to transfer any funds remaining after payment of claims to the "State Insurance Liquidator." *See* TEX.INS.CODE art. 21.28, § 8A

---

**3.** "Board" as used herein refers also to the Commissioner to the extent that the Board's former functions have been assigned to the Commissioner under the current version of the statute.

(Vernon Supp.1989). This transfer from the "liquidator as receiver" to the "liquidator as liquidator" suggests that the liquidator did assume a separate legal identity when acting as receiver.

The Department also relies on the decision in *Eagle Life Insurance Company v. Hernandez*, 743 S.W.2d 671 (Tex.App.—El Paso 1987, writ denied). The court was required to decide whether the State Insurance Liquidator, acting as receiver, was exempt as a state entity from the requirement of posting an appellate cost bond. *See* TEX.CIV.PRAC. & REM.CODE § 6.001. The court held that the liquidator was not exempt, because in acting as receiver the liquidator "stands in the shoes of the insolvent corporation, not those of the Board of Insurance Commissioners." 743 S.W.2d at 671. The court further noted that the receiver's expenses, including the appellate bond, would be paid from the assets of the insurer, not the assets of the State.

In *In re Ideal Mut. Ins. Co.*, 140 A.D.2d 62, 532 N.Y.S.2d 371 (1988), the New York Superintendent of Insurance, acting in the statutory role of liquidator of an insolvent insurer, sued the insurer's officers and directors for malfeasance. The defendants interposed the defense of comparative negligence, contending that the Superintendent's own prior negligence in regulating the company contributed to its insolvency. The court held, however, that the Superintendent's prior conduct as a state regulator could not be attributed to the Superintendent as liquidator. "When acting as statutory liquidator of an insolvent insurer, the Superintendent is essentially a court-appointed private trustee who for all practical purposes takes the place of the insolvent insurer and stands in its shoes...." 532 N.Y.S.2d at 374. And in *Corcoran v. American Plan Corporation*, 886 F.2d 16, 19–20 (2nd Cir. 1989), the court concluded that the New York Superintendent of Insurance, acting as liquidator, could not maintain an action for mail fraud, because the deceptive conduct had been perpetrated on the Superintendent in his legally distinct role as regulator. *See also North Carolina ex rel. Long v. Alexander & Alexander Servs., Inc.*, 711 F.Supp.

257, 263 (E.D.N.C.1989) (claim against insurance commissioner in individual capacity for actions beyond the scope of statutory authority could not be asserted as counterclaim in action brought by commissioner as receiver).

Even assuming that the Board's designated liquidator does assume a separate legal identity upon being appointed receiver for an insolvent insurer, we nonetheless conclude that the receiver's conduct remains subject to Chapter 105. The receiver is subject to removal by the Board, and the receiver's compensation remains within the Board's control. This, for practical purposes, vests the Board with ultimate control over the receiver.

More importantly, we disagree that the receiver for an insolvent insurer serves merely as a "private trustee". To the contrary, the receiver principally performs a public, regulatory function. Prior to 1939, there was no statutory liquidator, and the receivership court had complete discretion in selecting a receiver for an insolvent insurer. *See Phillips v. Perue*, 111 Tex. 112, 229 S.W. 849, 851 (1921). The present, centralized system was instituted by the Legislature for the express purpose of placing the "liquidation, rehabilitation, reorganization or conservation of insurers ... under the Board of Insurance Commissioners." Act of June 30, 1939, 46th Leg., R.S., 1939 Tex.Gen.Laws, Vol. I, p. 389. While the receiver stands in the shoes of the insurer for purposes of asserting the insurer's rights on behalf of its creditors, the receiver also performs a public function in assuring an orderly and efficient liquidation. One commentator characterizes the receiver's role as follows:

> The liquidation of insurers is commonly exclusively vested in the hands of the state insurance commissioner. The purpose of establishing a system of liquidation through the state is to prevent the waste of assets which had previously been occasioned through receiverships. The commissioner as liquidator of an insolvent insurance company is a state officer performing duties enjoined upon him by the state and in their performance he acts in behalf of the state.

LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE 3D, § 5:37, at 5–65 (1995). *See*

*also United States Dep't of the Treasury v. Fabe,* 508 U.S. 491, 494, 113 S.Ct. 2202 [2204–05], 124 L.Ed.2d 449 (1993) (characterizing Ohio liquidation scheme as a "complex and specialized administrative structure for the regulation of insurance companies from inception to dissolution").

Moreover, our holding furthers the purpose of Chapter 105. The Legislature has created a comprehensive scheme bringing all insurance liquidation proceedings under the control of the Board. The Legislature has also vested the Board's liquidators with special statutory powers, such as statewide subpoena power to compel the attendance of witnesses and the production of records at the liquidators' offices in Austin. *See* TEX. INS.CODE art. 21.28, § 4(d).

The Department emphasizes that any recovery by the receiver on the counterclaim would have gone to First Service for the benefit of its creditors, not to the State. However, Chapter 105 liability is not foreclosed merely because an action is not brought for the direct pecuniary benefit of the State. Thus, Chapter 105 fees have been awarded in a suit to protect a child from alleged abuse, *see Black v. Dallas County Child Welfare Unit,* 835 S.W.2d 626 (Tex. 1992), in an action to enforce an alleged child support order, *see Attorney General of Texas v. Cartwright,* 874 S.W.2d 210 (Tex.App.— Houston [14th Dist.] 1994, writ denied), and in a suit alleging workers' compensation fraud. *See Attorney General of Texas v. Johnson,* 791 S.W.2d 200 (Tex.App.—Fort Worth 1990, writ denied). Similarly, the liquidator here, while not seeking damages directly on behalf of the State, was furthering the State's interest in protecting the rights of citizens who deal with insurance companies.

Furthermore, during the pendency of the counterclaim, the law authorized appropriations to assist the liquidator in the performance of his duties. *See* TEX.INS.CODE art. 21.28, § 12A(a) (expired January 1, 1994). Although the Department argues that this authorization applied only when the liquidator was *not* acting as receiver, the statutory language indicates otherwise. Section 12A expressly provided for the appropriation of funds to assist the liquidator in performing

"other Insurance Department duties when not involved in liquidation or conservation matters," *and* to ensure "that facilities be immediately and continually available to meet any or all of the requirements of preparing for, placing in, continuing or completing any liquidation, rehabilitation, reorganization or conservation of insurers."

In an analogous setting, several federal courts have held that a receiver for a national bank, appointed by the Comptroller of Currency, is an officer and agent of the United States government. *See In re Chetwood,* 165 U.S. 443, 458, 17 S.Ct. 385, 391, 41 L.Ed. 782 (1897); *La Parr v. City of Rockford,* 100 F.2d 564, 567 (7th Cir.1938), *cert. denied,* 307 U.S. 624, 59 S.Ct. 827, 83 L.Ed. 1502 (1939); *Hood v. Hardesty,* 94 F.2d 26, 29 (4th Cir.), *cert. denied,* 303 U.S. 661, 58 S.Ct. 765, 82 L.Ed. 1120 (1938). *See also* 9 C.J.S BANKS AND BANKING § 749, p. 1304 (1938) ("The receiver of a national bank stands in the place of the bank and, when appointed by the comptroller of the currency, is a federal officer or agent rather than an officer of a court.").

### B

■ The Department alternatively argues that the receiver is an agent of the receivership court, and thus cannot be deemed to be an agent of the State. The Department notes that, under article 21.28, the receivership court retains some supervisory control over the receiver's actions. *See, e.g.,* TEX. INS.CODE art. 21.28, § 2(a) (court makes determination to appoint receiver); *id.* § 2(g) (court approval required for receiver to sell property); *id.* § 2(g) (court approval required for receiver to compromise claims exceeding $10,000). The Department also relies on the *"Betts* trilogy", three cases defining the respective scope of executive and judicial control over receivership proceedings. *See State Bd. of Ins. v. Betts,* 158 Tex. 83, 308 S.W.2d 846 (1958) (*"Betts I"*); *State Bd. of Ins. v. Betts,* 158 Tex. 612, 315 S.W.2d 279 (1958) (*"Betts II"*); *State Bd. of Ins. v. Betts,* 158 Tex. 624, 315 S.W.2d 286 (1958) (*"Betts III"*). Taken together, however, these cases actually undercut the Department's argument.

In *Betts I*, the Court held that the receivership court had the discretion to appoint an attorney for the statutory receiver where the Board's appointee had resigned and no successor had been designated. While recognizing that article 21.28, section 12(b) vests the Board with authority to appoint counsel for the liquidator, the Court nonetheless held that the receivership court possessed implied authority to appoint counsel in such circumstances. "Once liquidation has begun, the court is not rendered powerless to carry out its heavy responsibilities by a nonperformance or misperformance on the part of the Board or its Commissioner." 308 S.W.2d at 855.

In *Betts II*, however, where there was no vacancy in the office of liquidator, the Court held that the receivership court lacked discretion to appoint anyone other than the Board's designated liquidator as receiver. Unlike in *Betts I*, in this situation there was no "nonperformance on the part of the Board or the Commissioner." 315 S.W.2d at 283.

Finally, in *Betts III*, the Court similarly held that the receivership court had no discretion to usurp the Board's statutory power to set the compensation of the liquidator's counsel. "Article 21.28, § 12(b) not only provides that the Insurance Commissioner under the supervision of the State Board of Insurance ... shall have the power to appoint and fix the compensation of counsel but also directs the method and means by which payments or compensation may be made." 315 S.W.2d at 288.

While the receivership court retains a certain amount of supervisory control under article 21.28, the *Betts* trilogy makes clear that the Legislature also intended to vest a significant amount of control in the executive branch, specifically for the purpose of creating a centralized, efficient liquidation system. Indeed, we indicated in *Betts I* that the purpose of these types of statutes

> was to provide for an economical liquidation of insolvent insurance companies *through the agency of a state department*, and to prevent the waste of assets which theretofore had been occasioned through (judicial) receiverships.

308 S.W.2d at 850 (quoting *In re Knickerbocker Life Ins. Co.*, 199 A.D. 503, 191 N.Y.S. 780, 781 (1922)) (emphasis added). The *Betts* trilogy thus supports our conclusion that the receiver was performing a statutory duty on behalf of the Board.

### C

■ The Department argues that if the receiver's counterclaim was a claim "by a state agency," then the receiver should have been represented by the Attorney General in prosecuting the claim, rather than by private attorneys retained by the receiver. The Legislature's failure to authorize the Attorney General to assist in prosecuting claims on behalf of an insolvent insurer, the Department contends, is evidence that such claims advance only a private, not a public, purpose. To address this argument, we briefly review the constitutional and statutory role of the Attorney General.

Article IV, Section 22 of the Texas Constitution provides as follows:

> [The Attorney General] shall represent the State in all suits and pleas in the Supreme Court of the State in which the State may be a party ... and perform such other duties as may be required by law.

TEX. CONST. art. IV, § 22. The Legislature has expanded the Attorney General's authority to include representing the State before the courts of appeals. *See* TEX.GOV'T CODE § 402.021. For suits in district court, the Constitution provides that the State shall be represented by either the District Attorney or the County Attorney, as determined by the Legislature. *See* TEX. CONST. art. V, § 21. This constitutional provision, however, does not preclude the Legislature, pursuant to the authority delegated to it under Article IV, Section 22, from empowering the Attorney General to likewise represent the State in district court. *See Brady v. Brooks*, 99 Tex. 366, 89 S.W. 1052, 1055 (1905). While there is no general statute authorizing the Attorney General to represent the State and its agencies in district court, the Legislature has provided for such representation in particular types of cases. *See, e.g.*, TEX.CIV. PRAC. & REM.CODE § 101.103 (requiring At-

torney General to defend certain actions brought under Tort Claims Act).

Regardless of how the representational authority is allocated between the Attorney General, District Attorney, and County Attorney, we have held that the Legislature may not divest these officials of their collective constitutional authority by shifting representation to some other attorney employed by the State or under contract to the State. *See Hill County v. Sheppard,* 142 Tex. 358, 178 S.W.2d 261, 264 (1944); *Maud v. Terrell,* 109 Tex. 97, 200 S.W. 375, 376 (1918). We made clear in *Maud,* however, that the Legislature may authorize an agency to retain private counsel to prosecute actions, as long as such counsel's authority is subordinate to that of the Attorney General, County Attorney, or District Attorney. *See Maud,* 200 S.W. at 377–78.[4] *See also* TEXAS ATTORNEY GENERAL OPS. MW–340 (1981); MW–24 (1979). Further, a statute authorizing an agency to hire outside counsel should, if possible, be construed as complying with this constitutional requirement, even if the statute does not expressly recognize the authority of the Attorney General. *See Maud,* 200 S.W. at 376. Thus, in *Maud,* we upheld a statute authorizing the Comptroller "to appoint and contract with persons to collect inheritance taxes," because the statutory language did not "unequivocally supplant the county attorneys and the Attorney–General in their authority to prosecute the suits of the State for the recovery of the taxes." 200 S.W. at 377.

In the present case, the Legislature has not expressly authorized the Attorney General to assist the receiver in prosecuting claims on behalf of an insurer's estate. Rather, article 21.28 authorizes the receiver to hire counsel, to be paid as a priority expense from the funds of the insolvent insurer. *See* TEX. INS.CODE art. 21.28, § 12(h). This, of course, is a characteristic of traditional, common law receiverships, which was retained by the Legislature in article 21.28. While the Legislature never actually declared that the receiver's attorney is *not* subordinate to the Attorney General, we need not resolve this question. Regardless of the Attorney General's role in the proceedings, we are convinced that the Legislature, in enacting article 21.28, intended to create a statutory receivership scheme under the centralized control of the Board, for the purpose of promoting a public, regulatory function. The Legislature's retention of one particular characteristic of common law receiverships (i.e., the selection and compensation of the receiver's counsel) does not alter the fundamentally public nature of this statutory scheme. Whether any aspect of article 21.28 usurps the constitutional authority of the Attorney General, District Attorney, or County Attorney is an issue that was neither raised below nor presented as a point of error in this Court. Accordingly, we express no opinion on it.

Moreover, we note that the Attorney General does indeed play an express role under article 21.28. Pursuant to a 1995 amendment, receivers and their counsel are cloaked with immunity for actions carried out in good faith. *See* TEX.INS.CODE art. 21.28, § 2(j). The Attorney General is required to defend the receiver and the receiver's counsel in any action brought against them to which this immunity applies. *See id.* § 2(k). This use of the Attorney General to protect the receiver and his or her agents further indicates that these persons are performing a public function on behalf of the State.[5]

We thus hold that, during the pendency of the counterclaim at issue here, the receiver acted on behalf of the Board for purposes of Chapter 105. While most of the relevant statutory provisions currently mirror those in effect during the pendency of the counterclaim, some are different. For example, article 21.28 no longer provides for legislative

---

4. A 1991 amendment to the Government Code requires agencies desiring to hire outside counsel to obtain approval from the Attorney General. *See* TEX.GOV'T CODE § 402.0212 (added by Act of Aug. 22, 1991, 72nd Leg., 1st C.S., ch. 4, § 5.01, 1991 Tex.Gen.Laws 98, 103 (eff. Aug. 22, 1991)).

5. The statute characterizes this immunity as "judicial immunity." *See* art. 21.28, § 2(k). As noted previously, however, while certain actions of the receiver are controlled by the receivership court, the receiver is selected by the Board, is subject to removal only by the Board, and is compensated according to the dictates of the Board.

appropriations to assist the liquidator in the performance of his or her duties. We accordingly express no opinion on how this issue would be resolved under current law.

### III

■ As an additional ground for its judgment, the court of appeals held that El Paso Electric is estopped from arguing that the receiver acted on behalf of the Board, because El Paso Electric argued to the contrary in the trial court in connection with a motion to disqualify counsel.

Shortly after being appointed receiver for First Service, the liquidator moved to disqualify Small, Craig & Werkenthin, El Paso Electric's counsel, because that firm had previously represented the statutory liquidator in an unrelated receivership proceeding several years earlier. In response, El Paso Electric argued to the trial court as follows:

> When the person serving in the position of State Insurance Liquidator is appointed receiver of an insolvent insurance company, pursuant to section 2(a), he ceases to act as the Liquidator, an officer in the executive branch, and instead becomes the agent of the receivership Court to act on behalf of the estate.... The personality of the Statutory Liquidator, or even his office, is not the real party in interest when a firm, such as SCW, undertakes representation. Instead, the real party in interest is the receivership estate, administered through the specific judicial proceedings concerned with the insolvent insurer.

Consequently, El Paso Electric reasoned, the prior representation created no conflict because the liquidator assumes a separate legal identity in each proceeding. No ruling on the motion to disqualify is reflected in the record, and Small, Craig & Werkenthin continued representing El Paso Electric.

The court of appeals, citing *Austin Transp. Study Policy Advisory Comm. v. Sierra Club,* 843 S.W.2d 683, 689–90 (Tex. App.—Austin 1992, writ denied), concluded that "a party [may not] argue a theory on appeal that is different from that presented to the court below." 903 S.W.2d at 138. In *Sierra Club,* however, the appellant attempted to switch positions on the *same issue,* first

arguing in the trial court that all questions should be submitted to the jury and then arguing on appeal that certain questions should be decided by the court. The present case is somewhat different. While there may be some conceptual inconsistencies between El Paso Electric's trial court argument in response to the motion to disqualify and its present argument supporting Chapter 105 fees and expenses, these respective arguments pertain to completely separate issues. Moreover, the Department does not contend that it has somehow detrimentally relied on El Paso Electric's earlier argument or that El Paso Electric's actions will produce injustice. Under these circumstances, we hold that El Paso Electric is not estopped from asserting its present arguments.

### IV

We next examine the role of the conservator. The Commissioner of Insurance is vested with discretion to appoint a conservator for an insolvent insurer if the Commissioner determines that mere supervision is inadequate to accomplish the rehabilitation of the company. *See* Tex.Ins.Code art. 21.28–A, § 5. The conservator, unlike a receiver, does not take title to the insurer's assets, but is authorized "take all necessary measures to preserve, protect, and recover any assets or property of such insurance company, including claims or causes of action belonging to or which may be asserted by such insurance company, and to deal with the same in his own name as conservator...." *Id.* The conservator works under the supervision of, and reports to, the Commissioner, *see id.,* and the conservator's decisions may be appealed to the Commissioner. *See* art. 21.28–A, § 7.

■ Because the conservator works under the direct control of the Commissioner in exercising regulatory control over insolvent insurers, the arguments discussed previously in connection with the receiver apply with even greater force to the conservator. We thus conclude that the actions of the conservator are attributable to the Board for purposes of Chapter 105.

V

The Department finally argues that our holding creates a conflict of interest. The Department contends that, in exchange for the receiver dismissing the counterclaim, El Paso Electric agreed to pay to the receiver (for the benefit of First Service's creditors) two-thirds of any fees recovered by El Paso Electric from the State under Chapter 105. The Department thus argues that, under our present holding, the receiver actually stands to benefit by bringing a frivolous claim.

This settlement agreement is not in the record, and El Paso Electric disputes the Department's characterization of it. According to El Paso Electric, a part of its recovery under Chapter 105, if any, will flow to individuals asserting claims against it in other litigation, but not to the receiver or the receivership estate. Because the Department's argument is outside the record, we express no opinion about whether any alleged settlement agreement might affect El Paso Electric's ability to recover under Chapter 105.

\*　　\*　　\*

For the foregoing reasons, we reverse the judgment of the court of appeals and remand this cause to the trial court for further proceedings.[6]

GONZALEZ, J., filed a dissenting opinion, in which SPECTOR, J., joined.

GONZALEZ, Justice, joined by SPECTOR, Justice, dissenting.

Article 21.28 of the Texas Insurance Code implements a comprehensive plan for handling insolvent insurers. This scheme unquestionably furthers state interests. It does not follow, however, that the conservator and subsequent receiver of First Service Life Insurance Company (First Service) acted only, or even principally, on behalf of the

state. The majority opinion recognizes the conflicting nature of the receiver as a private, judicial, and state executive actor, but the Court determines that the receiver's executive-actor attributes are dominant and, for purposes of Chapter 105 of the Texas Civil Practice and Remedies Code, subject state coffers to liability for attorney's fees and expenses. I conclude that the receiver acted primarily on behalf of First Service and its creditors and policyholders. Additionally, I disagree with the Court's decision to remand this cause to the trial court without providing any guidance to that court and the parties as to how to proceed. For the reasons discussed below, and for the reasons stated in the court of appeals' opinion, 903 S.W.2d 133, I would affirm the judgment of the court of appeals.

Chapter 105 mandates recovery of fees, expenses, and reasonable attorneys' fees, subject to two qualifications: (1) the claimant must be a "party to a civil suit ... brought by or against a state agency in which the agency asserts a cause of action against the party"; and (2) a court must subsequently dismiss the action and find it "frivolous, unreasonable, or without foundation." TEX.CIV. PRAC. & REM.CODE § 105.002. For purposes of a Chapter 105 claim, the Legislature has defined a "state agency" as any agency "in the executive branch of state government" that is "created by the constitution or statute of this state," and that "has statewide jurisdiction." *Id.* § 105.001(3). Admittedly, the receiver is appointed by the State Board of Insurance and can only be removed by the Board.[1] *See* TEX.INS.CODE art. 21.28, § 2(a); *see also State Bd. of Ins. v. Betts,* 158 Tex. 612, 315 S.W.2d 279, 283 (1958). The Board also has the exclusive power to set the receiver's compensation. *See* TEX.INS.CODE art. 21.28, § 2(a); *State Bd. of Ins. v. Betts,*

---

**6.** Justice Gonzalez argues in his dissenting opinion that, even though the trial court did not reach the issue of whether the counterclaim was frivolous, we should decide that issue here. We disagree. Neither party presents any argument on this issue. Indeed, El Paso Electric does not even ask for this relief, instead requesting only that we remand the cause to the trial court for a determination of whether the counterclaim was frivolous. Moreover, while the assessment of fees and expenses is ultimately a matter for the

court to decide, the parties may wish to more fully develop the record on this issue, as no evidentiary hearing has yet been held in connection with El Paso Electric's Chapter 105 motion.

**1.** As the majority opinion notes, since this litigation began, the Legislature has replaced the Board of Insurance with the Department of Insurance and a Commissioner. 937 S.W.2d at 434 n. 2.

158 Tex. 624, 315 S.W.2d 286, 287 (1958). Nevertheless, I reject the majority's conclusion that the conduct of First Service's conservator and subsequent receiver is sufficiently linked to the Board to confer to the receiver or conservator state-agency status under Chapter 105. The power to appoint or remove and set compensation is not coextensive with the power to control, especially when the receiver assumes a specific legal capacity distinct from the Board.

A point-by-point analysis of article 21.28 reveals the nature of this distinct legal capacity. For example, the receiver principally acts on behalf of the insurer when bringing and pursing legal claims in judicial proceedings. In other words, while in form the liquidator is a state employee, in substance the liquidator who acts as receiver "stands in the shoes of the insolvent insurer, not those of the Board of Insurance Commissioners." *Eagle Life Ins. Co. v. Hernandez*, 743 S.W.2d 671, 671 (Tex.App.—El Paso 1987, writ denied), *overruled on other grounds, Grand Prairie Indep. Sch. Dist. v. Southern Parts Imports, Inc.*, 813 S.W.2d 499, 500 n. 4 (Tex. 1991). The state, whether it be through the Board or the Attorney General, has no independent right to bring suit in these matters. Article 21.28, section 2(b) provides that the "receiver and his successors in office shall be vested by operation of law with the title to all of the property, contracts, and rights of action of such insurer, wherever located, as of the date of entry of the order directing possession to be taken." TEX.INS.CODE art. 21.28, § 2(b). This provision highlights the fact that judicial rights of action pursued by the receiver are originally, and ultimately, those of the insurer.

The receiver's role is even clearer when managing assets. As article 21.28, section 2(a) states, the receiver "shall forthwith take possession of the assets of such insurer and deal with the same in his own name as receiver or in the name of the insurer as the court may direct." TEX.INS.CODE art. 21.28, § 2(a). Though this scheme works through the structure of the Board, the statute precisely authorizes the receiver to act on behalf of the insurer in the fundamentally important area of asset management. Moreover, the plain language of the text provides that some measure of judicial authority is necessary to discharge the receiver's statutory duties.

I concede that article 21.28 grants the receiver certain executive-agency characteristics. As the majority notes, these formalities in some respect link receivers closely with the Board. But even a mountain of formal provisions should not obscure the substance of the receiver's capacity. It is true that the receiver and his agents "are employees of the State Board of Insurance" for the purposes of reporting payroll and submitting vouchers to the comptroller. TEX.INS.CODE art. 21.28 § 12A(b). However, it is more significant that receivers' salaries always have been paid first and foremost out of the assets of the distressed insurer. Indeed, the statute expressly provides for "[t]he payment of such compensation and all expenses of liquidation … out of funds or assets of the insurer." TEX.INS.CODE art. 21.28 § 12(b).

Article 21.28 likewise provides formal similarities and substantive differences between receivers and state executive-agency lawyers for purposes of statutory immunity. As the majority points out, the receiver has good-faith immunity from suit when pursuing the "performance of powers and duties under" article 21.28, including authorization of the Attorney General to represent the receiver in applicable lawsuits. 937 S.W.2d at 439–440. The Attorney General likewise represents many state executive-agency lawyers in similar good-faith immunity suits. However, the Attorney General's mandate is specifically limited to issues involving the "applicability or effect of the judicial immunity" codified in article 21.28, insulating the Attorney General from legal representation of the liquidator in the underlying case. TEX.INS.CODE art. 21.28 § 2(j)-(k).

The legislative purpose behind Chapter 105 further supports my view. As this Court has stated before, the "purpose of chapter 105 is to afford an aggrieved citizen some remedy from a governmental agency for the misuse of governmental power." *Black v. Dallas County Child Welfare Unit*, 835 S.W.2d 626, 629 n. 5 (Tex.1992). Keeping this purpose in mind, the present case is clearly distinguishable from the cases upon which the majority relies, *Black v. Dallas*

County Child Welfare Unit,Attorney General of Texas v. Cartwright, 874 S.W.2d 210 (Tex. App.—Houston [14th Dist.] 1994, writ denied), and Attorney General of State of Texas v. Johnson, 791 S.W.2d 200 (Tex.App.—Fort Worth 1990, writ denied). Each of these cases involved allocation of state assets for the protection of children or for the prevention of fraudulent claims. In this case, assets to prosecute the allegedly frivolous claims came only from the insolvent insurer. Any cross-claim recovery of damages by the receiver in this case will clearly run to the insolvent insurer, not the state.

Analysis of the conservator's role yields the same conclusion: Chapter 105 should not apply. Like the receiver, the conservator is appointed by the Board. See TEX.INS.CODE art. 21.28–A, § 5. Conservators likewise have control of the insolvent insurer's litigation and assets. See id. (stating that the conservator "shall be empowered to ... preserve, protect, and recover any assets or property of such insurance company, and to deal with the same in his own name as conservator, and shall be empowered to file, prosecute, and defend any suit or suits which have been filed or which thereafter may be filed by or against such insurance company"). The conservator, like the receiver, therefore acts in the capacity of the insurer's legal representative. As with a receiver, Chapter 105 should not allow recovery of attorneys' fees in this type of case.

The Legislature must use clear and unambiguous language to waive sovereign immunity. Guillory v. Port of Houston Auth., 845 S.W.2d 812, 813–14 (Tex.), cert. denied, 510 U.S. 820, 114 S.Ct. 75, 126 L.Ed.2d 43 (1993); Barr v. Bernhard, 562 S.W.2d 844, 846 (Tex. 1978). Attorneys' fees may not be awarded unless prescribed by statute for the particular kind of case. First City Bank v. Guex, 677 S.W.2d 25, 30 (Tex.1984); see Texas Employment Comm'n v. Camarena, 710 S.W.2d 665, 670 (Tex.App.—Austin 1986), rev'd on other grounds, 754 S.W.2d 149 (Tex.1988). Chapter 105 waives immunity for entities clearly recognizable as "state agencies." However, as explained, the Legislature could not have imagined that a receiver or conservator acting primarily on behalf of a failed private insurer would be considered a state agency, thereby subjecting the state to claims for attorneys' fees in frivolous lawsuits. The Court errs in concluding otherwise.

The Court also remands the case "for further proceedings" without further explanation of what it expects will occur on remand. If the Court wishes only to have the trial court rule on the merits of whether the counterclaim brought by the receiver in this case is frivolous, this is a question of law that we can and should decide, thereby saving the parties the expenses and time of another trip up the judicial pipeline. Whether a matter is groundless is a question of law, and these questions are within our jurisdiction to render final judgment. See Donwerth v. Preston II Chrysler–Dodge, Inc., 775 S.W.2d 634, 636 (Tex.1989) (concluding that issue of groundlessness in deceptive trade practices action was question of law, not fact, under statutory language authorizing recovery of attorneys' fees "when the court finds the DTPA action was groundless") (citing TEX. BUS. & COM.CODE § 17.50(c)). There is no principled basis for concluding that "groundless" and "frivolous" have different meanings. Moreover, Chapter 105 expressly conditions an award of attorneys' fees on a finding by the court. TEX.CIV.PRAC. & REM. CODE § 105.002. Because our Court is empowered to decide the question of frivolousness as a matter of law, there is no reason to remand this cause to the trial court.

By promoting form over substance, the Court erroneously concludes that the actions of a receiver or conservator acting primarily on behalf of a failed insurer can subject the state to liability under Chapter 105 of the Civil Practice and Remedies Code. Potentially, this case could cost the taxpayers of this state more than $12 million in attorneys' fees, and it opens the door to countless other lawsuits of this nature. Conceivably, every time a receiver or conservator brings a claim, the state will be asked to pick up the tab for attorneys' fees if the court determines that the claim is frivolous. For the foregoing reasons, and for the reasons stated in the court of appeals' opinion, I believe that both

the trial court and the court of appeals correctly decided this case.