Criminal Case Template



COURT OF APPEALS


EIGHTH DISTRICT OF TEXAS


EL PASO, TEXAS



)
 

ARTURO DE LA CRUZ,
)
 No. 08-02-00208-CV

)


 Appellant,
)
 Appeal from

)
 

v.
)
 41st District Court

)


COLUMBUS P. BROWN a/k/a
)
 of El Paso County, Texas

C.P. BROWN,
)


 )
 (TC# 2001-326)

 Appellee.
)



O P I N I O N



 In this case of first impression, we consider whether statutory protections afforded to the
residents of colonias may give rise to a private cause of action for monetary damages. Because we
conclude that the Legislature intended to create a private cause of action, we reverse and remand. 
FACTUAL SUMMARY


 On December 3, 1984, Arturo de la Cruz purchased from Columbus P. Brown by executory
contract a parcel of land described as Lot 3, Block 5, Roseville Subdivision, El Paso County, Texas,
also known as 320 Bauman Road, El Paso County, Texas. De La Cruz made the final payment on
June 9, 1997. In January 2001, he filed suit for damages arising from Brown's failure to transfer
recorded legal title to the property in question. He argued that Section 5.102 of the Texas Property
Code provided for the imposition of fines on the seller of real property if the seller failed to transfer
recorded legal title within thirty days of receipt of the purchaser's final payment. Tex.Prop.Code
Ann. § 5 .079 (Vernon's Supp. 2003). (1) Brown recorded the deed to the property on March 30, 2001,
nearly four years after final payment was tendered. 

 De La Cruz filed a motion for summary judgment claiming that he had established as a matter
of law his entitlement to the sum of $648,5000 in penalties for a violation of Section 5.102. By
amended motion, he adjusted the penalty to $664,500. In his first amended answer, Brown claimed
that Section 5.102 did not provide a private cause of action and that the penalties sought to be
imposed would amount to an excessive fine. He alternatively alleged the affirmative defenses of
waiver, estoppel and laches, and contended that De La Cruz had failed to mitigate his damages, if
any. Brown then filed a response to De La Cruz's amended motion for summary judgment, in which
he asserted essentially the same arguments as those presented in his amended answer. Brown also
filed a motion for summary judgment arguing that Section 5.102 did not grant De La Cruz a private
cause of action. Pertinent to our disposition, he did not raise any of his affirmative defenses in that
motion for summary judgment. The trial court granted Brown's motion, denied De La Cruz's
motion, and rendered a take-nothing judgment in favor of Brown. 

 This appeal follows. De La Cruz brings seven issues challenging the granting of Brown's
motion for summary judgment and the denial of his own. The main issue before us--the
interpretation and construction of Section 5.102 of the Texas Property Code--is one of first
impression. (2)

STANDARD OF REVIEW


 When examining cross-motions for summary judgment, the reviewing court should analyze
the summary judgment evidence produced by each side and determine all questions presented. 
Commissioners Court v. Agan, 940 S.W.2d 77, 81 (Tex. 1997). We should then render such
judgment as the trial court should have rendered. Id. Both motions for summary judgment turn on
the statutory construction of Texas Property Code Section 5.102; thus, the case is ideally suited for
summary judgment.

 Statutory construction is a question of law, which we review de novo. Texas Dep't of Transp.
v. Needham, 82 S.W.3d 314, 318 (Tex. 2002). Our purpose in construing a statute is to determine
legislative intent. Helena Chemical Co. v. Wilkins, 47 S.W.3d 486, 493 (Tex. 2001). As a starting
point, we construe the statute as written and, if possible, ascertain intent from the statutory language. 
Id. citing Morrison v. Chan, 699 S.W.2d 205, 208 (Tex. 1985). Legislative intent should be
determined by reading the language used and construing the statute in its entirety. See In re Bay
Area Citizens Against Lawsuit Abuse, 982 S.W.2d 371, 380 (Tex. 1998); Taylor v. Firemen's &
Policemen's Civil Serv. Comm'n, 616 S.W.2d 187, 190 (Tex. 1981). Further, we should read every
word, phrase, and expression as if it were deliberately chosen, and presume that words excluded
from the statute were excluded purposefully. Gables Realty Ltd. P'ship v. Travis Cent. Appraisal
Dist., 81 S.W.3d 869, 873 (Tex.App.--Austin 2002, pet. denied). We may also consider other
factors, including the object the statute seeks to obtain, circumstances under which the statute was
enacted, legislative history, and the consequences of a particular construction. Id.; see also
Tex.Gov't Code Ann. § 311.023 (Vernon 1998).


THE STATUTE AT ISSUE


 Section 5.102 provided:

 (a) The seller shall transfer recorded, legal title of the property covered by the
executory contract to the purchaser not later than the 30th day after the date the seller
receives the purchaser's final payment due under the contract.


 (b) A seller who violates Subsection (a) is subject to a penalty of:


 (1) $250 a day for each day the seller fails to transfer the title to the
purchaser during the period that begins the 31st day and ends the 90th
day after the date the seller receives the purchaser's final payment due
under the contract; and


 (2) $500 a day for each day the seller fails to transfer title to the
purchaser after the 90th day after the date the seller receives the
purchaser's final payment due under the contract.


 (c) In this section, 'seller' includes a successor, assignee, personal representative,
executor; [sic] or administrator of the seller.


Act of June 17, 1995, 74th Leg., R.S., ch. 994, § 3 (amended 2001)(current version at Tex.Prop.
Code Ann. § 5.079 (Vernon Supp. 2003)).

LEGISLATIVE HISTORY OF THE STATUTE (3)


 Section 5.102 of the Texas Property Code was introduced during the 74th Legislative Session
as part of S.B. 336. Senate Committees on International Relations, Trade & Technology,
Bill Analyses, Tex. S.B. 336, 74th Leg., R.S. (1995). S.B. 336 sought to establish notice and cure
provisions required for a defaulting purchaser under a contract for deed and to establish requirements
for and loans associated with a contract for deed transaction in certain counties. Id. S.B. 336 was
signed in the Senate and House on May 27, 1995, and by the Governor on June 17, 1995. It became
effective on September 1, 1995. 

 The bill was targeted to address subdivisions known as colonias, described as "substandard,
generally impoverished, rural subdivisions that typically lack one or more of the basic amenities of
water, wastewater service, paved streets, drainage or electric service." Senate Committees on
International Relations, Trade & Technology, Bill Analyses, Tex. S.B. 336, 74th Leg.,
R.S. (1995). While colonias exist in the greatest concentration along the Texas-Mexico border,
particularly in the lower Rio Grande Valley and El Paso County, there are similarly substandard
subdivisions in virtually every area of Texas. Id.

 Residents of colonias almost always acquire lots by means of an executory contract, generally
known as a "contract for deed" or "contract for sale." Id. This type of conveyance is unlike a typical
deed of trust transaction in several notable respects. First, the property being conveyed generally is
land only, with no house, structure or improvements included. Second, under a contract for deed,
legal title does not transfer until all payments are made, and the purchaser may not accrue any equity 
in a tract even though substantial payments have been tendered. Third, contracts for deed are not
required to be recorded; and fourth, virtually none of the state and federal protections afforded
conventional home buyers apply to a purchaser under a contract for deed. Id.

 This paucity of remedies led to abusive practices by sellers in colonias. Id. For example,
sellers have sold individual tracts to two or more buyers, sold lots without a written contract, and
placed liens on lots subsequent to the sale without informing the purchaser. Id. Sellers have also
misrepresented the availability of water, sewer service and other utilities, and purchasers are often
not informed that the property lies in a flood plain or is otherwise unsuitable for habitation. Id.

 The magnitude of problems stemming from the development of colonias and the role that
contracts for deed play in allowing these problems to develop led some parties to call for an outright
prohibition on these conveyances. Id. However, low income families needing housing currently
have no other alternatives, as few, if any, banks or other conventional financial institutions are
willing to lend, and few insurers will provide coverage for colonias. Id.

 S.B. 336 originally provided that a seller who fails to transfer recorded legal title within thirty
days of receipt of the purchaser's final payment faced a daily penalty equal to a daily payment under
the executory contract. Id. As enacted, however, the bill imposes a penalty of $250 a day for each
day the seller remains in violation beginning on the 31st day and ending on the 90th day after the
date the seller receives the final payment due under the contract. The penalty increases to $500 per
day for each day the seller fails to transfer title after the 90th day. Id.

 Section 5.102 was amended and renumbered during the 77th Legislative Session. Senate
Comm. on Intergovernmental Relations, Bill Analyses, Tex. S.B. 198, 77th Leg., R.S.
(2001). Introduced as S.B. 198, the bill removed the income and geographical brackets and extended
state-wide protection to purchasers of real property by executory contract. Id. Signed in the Senate
and House on May 18, 2001, and by the Governor on June 13, 2001, S.B. 198 became effective on
September 1, 2001.

 While numerous changes were made to this chapter of the Texas Property Code, the
amendments to Section 5.102, renumbered as Section 5.079, are the focus of the issue at bar. 
Section 5.079(b) provides that the seller who fails to transfer title upon receipt of the final payment
is liable for reasonable attorney's fees and liquidated damages. Senate Comm. on
Intergovernmental Relations, Bill Analyses, Tex. S.B. 198, 77th Leg., R.S. (2001). Thus,
the "penalty" language of Section 5.102 was replaced with "liquidated damages" and provision was
made for recovery of reasonable attorney's fees. This statutory change applies only to a violation
occurring on or after September 1, 2001. Id. A violation pre-dating the effective date of the
amendment is governed by the law in effect when the violation occurred, and the former law is
continued in effect for that purpose. Id. Thus, for purposes of this appeal, we must look to
Section 5.102(b). 

IS THERE A PRIVATE CAUSE OF ACTION?


 The language of subsection (a) was not changed when Section 5.102 was amended and
renumbered as Section 5.079. Senate Comm. on Intergovernmental Relations, Bill
Analyses, Tex. S.B. 198, 77th Leg., R.S. (2001). In any event, Section 5.079(a) applies to an
executory contract on or after September 1, 2001, regardless of when the contract was entered into.
Id. Thus, Brown was required to transfer to De La Cruz recorded legal title no later than July 9,
1997, the thirtieth day after Brown received the final payment.

 The change in law made by Section 5.079(b) applies only to a violation that occurred on or
after September 1, 2001; the language of Section 5.102(b) remains in effect for the case at bar. Id. 
Brown is subject to a penalty of $250 a day for each day he failed to transfer title during the period
beginning July 10, 1997 and ending September 9, 1997; and $500 per day for each day after
September 10, 1997 until March 30, 2001, when title was finally transferred. Brown contends that
this statutory penalty applies to enforcement by the State of Texas through the Office of the Attorney
General and does not give rise to a private cause of action. He relies on amended Section 5.079,
which explicitly provides that the seller "is liable to the purchaser . . . for liquidated damages" in
arguing that the Legislature obviously did not intend a private cause action to be available until after
the 2001 amendments. Tex.Prop.Code Ann. § 5.079.

 Article IV, Section 22 of the Texas Constitution defines the powers and duties of the Texas
Attorney General:

 [The Attorney General] shall represent the State in all suits and pleas in the Supreme
Court of the State in which the State may be a party . . . and perform such other duties
as may be required by law.


Tex.Const. art. IV, § 22. The Legislature has expanded the Attorney General's authority to include
representing the State before the courts of appeals. See Tex.Gov't Code Ann. § 402.021 (Vernon
1998); El Paso Electric Company v. Texas Department of Insurance, 937 S.W.2d 432, 438 (Tex.
1996). For suits in district court, the Constitution provides that the State shall be represented by
either the District Attorney or the County Attorney, as determined by the Legislature. See
Tex.Const. art. V, § 21; El Paso Electric, 937 S.W.2d at 438. This constitutional provision,
however, does not preclude the Legislature, pursuant to the authority delegated to it under Article
IV, Section 22, from empowering the Attorney General to likewise represent the State in district
court. El Paso Electric, 937 S.W.2d at 438. While there is no general statute authorizing the
Attorney General to represent the State and its agencies in district court, the Legislature has provided
for such representation in particular types of cases. Id.

 Section 5.102 does not contain any language from which it can be concluded that the
Legislature intended the State to collect the penalty in a suit filed by the Attorney General. 
Significantly, there is no language specifically obligating or authorizing the Attorney General to
enforce the penalty by a civil suit. By contrast, there are numerous statutes which not only provide
for a civil penalty but further specify that the Attorney General is authorized to file suit to collect the
penalty on behalf of the State. See e.g., Tex.Agric.Code Ann. § 18.009 (Vernon Supp. 2003)
(penalty for violating subchapter or rule adopted under the subchapter relating to organic standards
and certification); Tex.Bus.&Com.Code Ann. § 38.302 (Vernon 2002)(penalty for violating
injunction related to telephone solicitation); Tex.Fin.Code Ann. § 31.108 (Vernon 1998)(penalty
against a state bank for failing to file a certain report); Tex.Hum.Res.Code Ann. § 32.0211 (Vernon
2001)(penalty for violation of prohibition against conflict of interest); Tex.Ins.Code Ann. § 101.105
(Vernon Pamph. 2003)(penalty for violations of Chapter 101 of Insurance Code); Tex.Nat.Res.
Code Ann. § 61.018 (Vernon 2001)(penalty for violations of Chapter 61 of Natural Resources
Code); Tex.Transp.Code Ann. § 21.154 (Vernon 1999)(penalty for violating chapter related to
administration of aeronautics); Tex.Util.Code Ann. § 15.028 (Vernon 1998)(penalty against a
public utility, customer owned pay telephone service provider, or affiliate for certain acts or
omissions). (4) Examples of such provisions are also found throughout the Property Code. See e.g.,
Tex.Prop.Code Ann. § 12.017(i)(authorizing attorney general to file suit to collect civil penalty
against a title insurance company officer for filing a false affidavit that mortgagor has paid off
mortgage); Tex.Prop.Code Ann. § 74.709 (Vernon Supp. 2003)(authorizing attorney general to file
suit to collect civil penalty against a holder of property who fails to file a report or deliver property);
Tex.Prop.Code Ann. § 221.075 (Vernon Supp. 2003)(under the Texas Timeshare Act, attorney
general may institute action against a managing entity to collect civil penalty for failure to file a
statement required by Section 221.074); Tex.Prop.Code Ann. § 301.112 (attorney general may file
suit to collect civil penalty assessed against a party engaging in discriminatory housing practice;
statute notes that civil penalty is assessed by commission to "vindicate the public's interest"). In the
absence of specific legislation, the Attorney General is not authorized to file suit to collect the
penalty provided for by Section 5.102(a).

 In reviewing the circumstances under which the original statute was enacted and legislative
history, it is clear that the Legislature was addressing the problems an individual purchaser faced
when entering into an executory contract to purchase land in a colonia. Senate Committees on
International Relations, Trade & Technology, Bill Analyses, Tex. S.B. 336, 74th Leg.,
R.S. (1995). The bill's history noted that a purchaser had very few rights or remedies under a
contract for deed, and that abusive practices by sellers of colonia lots were common. Id. With the
2001 amendments, the Legislature made the contract for deed protections applicable statewide. 
Senate Comm. On Intergovernmental Relations, Bill Analyses, Tex. S.B. 198, 77th Leg.,
R.S. (2001). These amendments buttress our conclusion that the purpose of this legislation was to
provide a measure of protection and legal recourse to the purchasers who have been victimized in
the past.

 We have already determined that Section 5.102 did not authorize the Attorney General to file
suit on behalf of the State to collect the penalty. If we accept Brown's argument that Section 5.102
did not provide a private cause of action to a purchaser, then the statute is rendered meaningless and
unenforceable as no one would be authorized to file suit to collect the penalty. Such a construction
is impermissible as the Legislature is never presumed to have done a useless thing. Hunter v. Fort
Worth Capital Corp., 620 S.W.2d 547, 551 (Tex. 1981); Collins v. County of El Paso, 954 S.W.2d
137, 147 (Tex.App.--El Paso 1997, pet. denied). Further, in construing a statute, it is presumed that
the entire statute is intended to be effective and a result feasible of execution is intended. 
Tex.Gov't Code Ann. § 311.021. We therefore conclude that the Legislature intended that
purchasers such as De La Cruz would have the ability to maintain a private cause of action to recover
the civil penalty established by Section 5.102. Issues One through Seven are sustained.

POSTURE OF AFFIRMATIVE DEFENSES


 De La Cruz asks that we reverse and render judgment in his favor. Although we agree with
De La Cruz that Section 5.102 provides him with a private cause of action, rendition is not an
appropriate remedy due to the procedural posture of this case. Both parties moved for summary
judgment on the private cause of action issue. Brown did not move for summary judgment on his
affirmative defenses but simply raised them in response to De La Cruz's motion for summary
judgment. Consequently, the trial court could not have rendered a take-nothing judgment on those
affirmative defenses. In other words, the affirmative defenses might have served to defeat
De La Cruz's motion for summary judgment but could not serve as an independent basis for the
rendition of judgment in Brown's favor. Because the trial court rendered a take-nothing judgment,
it is apparent that the trial court addressed only the argument pertaining to the construction of
Section 5.102 and did not address Brown's affirmative defenses raised in his response to the motion
for summary judgment. Therefore, remand rather than rendition is the appropriate remedy. Having
sustained Issues One through Seven, we reverse the judgment of the trial court and remand this cause
for further proceedings consistent with this opinion.


May 15, 2003 

 ANN CRAWFORD McCLURE, Justice


Before Panel No. 5

McClure, Chew, JJ., and Preslar, C.J. (Ret.)

Preslar, C.J. (Ret.)(sitting by assignment)
1. Act of June 17, 1995, 74th Leg., R.S., ch. 994, § 3, amended by Act of June 13, 2001, 77th Leg., R.S., ch.
693, § 1, eff. Sept. 1, 2001.
2. Only one other Texas case mentions Section 5.102. In Salinas v. Beaudrie, 960 S.W.2d 314 (Tex.App.--Corpus Christi 1997, no pet.), the court held that the statute applied to a contract for deed that was executed before the
effective date of the statute, since final payment was due after the effective date. Id. at 319. 
3. We will refer to Section 5.102 as it was numbered when originally enacted. As noted previously,
Section 5.102 was amended and renumbered by Act of June 13, 2001, 77th Leg., R.S., ch. 693, § 1, and its current
version is found at Tex. Prop. Code Ann. § 5.079 (Vernon Supp. 2003). 
4. While some statutes provide for the penalty and in the same statute authorize the Attorney General to
prosecute a suit to collect them, some statutes are more general. See e.g., Tex.Gov't Code Ann. § 442.012 (Vernon
1998)(authorizing attorney general to file suit to recover on behalf of the state a civil penalty provided by Chapter 442
of the Government Code); Tex.Parks & Wildlife Code Ann. § 86.025 (Vernon 2002)("At the request of the director,
the attorney general . . . shall bring suit for injunctive relief, to recover a civil penalty, to recover the value of material
taken in violation of this chapter, or for any appropriate combination of these remedies."); Tex.Water Code Ann. §
7.105(a)(Vernon 2000)("On the request of the executive director or the [Water Commission], the attorney general shall
institute a suit in the name of the state for injunctive relief under Section 7.032, to recover a civil penalty, or for both
injunctive relief and a civil penalty."). Neither the Property Code nor the relevant subchapters at issue here contain a
general provision authorizing the Attorney General to collect the penalty prescribed by Section 5.102.